## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BENJAMIN BIN CHOW,                      )
                                        )
      Plaintiff,                   )
                                        )
      v.                           )      C.A. No. 1:22-cv-00947-JLH-SRF
                                        )
CANYON BRIDGE CAPITAL                   )
PARTNERS, LLC, a Cayman Islands         )
Limited Liability Company, CANYON       )
BRIDGE CAPITAL MANAGEMENT,              )
LLC, a Delaware Limited Liability       )
Company, CANYON BRIDGE FUND I,          )
LP, a Cayman Islands Limited Partnership,)
HONG JOHN KAO, HEBER RAYMOND            )
BINGHAM, and PETER CHIN KUO,            )
                                        )
      Defendants.                  )

## REPORT AND RECOMMENDATION

    Plaintiff, Benjamin Bin Chow, brought this suit against Defendants, Canyon Bridge

Capital Partners, LLC (hereinafter "Capital Partners-CI"), Canyon Bridge Fund I, LP (hereinafter

"Fund-CI") (collectively the "Cayman Entities"), Canyon Bridge Capital Management, LLC

(hereinafter "Management LLC-DE"), Hong John Kao, Heber Raymond Bingham, and Peter

Chin Kuo (collectively the "Individual Defendants") for alleged fraud, breach of contract, breach

of fiduciary duties, and fraudulent transfers effectively eliminating Plaintiff's financial and

ownership interests in a private equity fund he established.  (D.I. 1-1 at 46–100)  Pending before

the court are the following:  a Motion to Dismiss for insufficiency of service and lack of personal

jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2), filed by the

Cayman Entities and the Individual Defendants (D.I. 12);[1] Plaintiff's related Motion for leave to

---

[1] The briefing submitted for this motion can be found at D.I. 13, D.I. 27, and D.I. 30.  Only the
Cayman Entities challenge the manner of service of process.

file a sur-reply (D.I. 35);[2] and a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim filed by Management LLC-DE.  (D.I. 15)[3]  For the reasons that follow, the court recommends that:

- The Cayman Entities and the Individual Defendants' Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(2) be **DENIED**;

- Plaintiff's Motion for leave to file a sur-reply brief in response to the Cayman Entities and the Individual Defendants' Motion to Dismiss be **DENIED AS MOOT**; and

- Management LLC-DE's Motion to Dismiss pursuant to Rule 12(b)(6) be **GRANTED WITHOUT PREJUDICE**.

## I.    BACKGROUND

### A.  Facts

In August of 2016, Plaintiff founded and was the sole owner of a Delaware corporation known as Canyon Bridge Capital Partners, Inc., a private equity fund focusing on global technology investments.  (*E.g.*, D.I. 1-1 at 46–100 (hereinafter "FAC") at ¶¶ 17, 53)[4]  Plaintiff alleges that his friend, Defendant Kao, acted as his attorney in the formation of a series of business entities associated with Plaintiff's investments.  (*E.g.*, *id.* at ¶ 31)  Kao is a domiciliary of Beijing, China and was a partner in the Beijing office of the law firm, Jones Day.  (*Id.* at ¶ 27; D.I. 4 at ¶ 3)[5]

In September and October of 2016, Kao drafted the documents to convert Canyon Bridge Capital Partners, Inc. to a Delaware limited liability company (hereinafter "Capital Partners-

---

[2] The briefing submitted for this motion can be found at D.I. 35, D.I. 36, and D.I. 37.

[3] The briefing submitted for this motion can be found at D.I. 16, D.I. 26, and D.I. 31.

[4] The factual references in this section are taken from the Verified First Amended Complaint ("FAC") filed in the Delaware Court of Chancery on June 10, 2022.  (D.I. 1-1 at 46–100)

[5] The FAC avers that Kao is a resident of New York and Bingham and Kuo are residents of California.  (FAC at ¶¶ 39, 42, 45)  However, all three have submitted declarations to the court claiming that the FAC is incorrect.  Rather, Kao is a resident of Beijing, China, Bingham is a resident of Utah, and Kuo is a resident of Hong Kong.  (D.I. 3 at ¶ 3; D.I. 4 at ¶ 3; D.I. 5 at ¶ 3)

LLC-DE") and the business formation documents for the following entities, which were filed at his direction with the Delaware Secretary of State: Canyon Bridge Capital Management Corp., a Delaware corporation (hereinafter "Management Corp.-DE"), and Canyon Bridge Fund I, LP, a Delaware limited partnership (hereinafter "Fund-DE") (collectively the "CB Entities"). (FAC at ¶¶ 56–58, 66) Management Corp.-DE was the named manager of Capital Partners-LLC-DE and the investment manager of Fund-DE. (*Id.* at ¶¶ 23–24) Capital Partners-LLC-DE was the general partner of Fund-DE. (*E.g.*, *id.* at ¶ 19)

In October of 2016, Plaintiff met with Kao and the other Individual Defendants, Bingham and Kuo, in Jones Day's San Francisco office and asked them to join the CB Entities. (*Id.* at ¶ 67) They agreed, and Kao began drafting a limited liability company ("LLC") Operating Agreement that set forth the rights and obligations of the Individual Defendants and Management Corp.-DE in managing Capital Partners-LLC-DE. (*See id.* at ¶¶ 66, 68; *see also* D.I. 28-1 at 27–65 (hereinafter "Operating Agreement")) In addition to the Operating Agreement, Kao drafted a limited partnership agreement governing Fund-DE. (*See* FAC at ¶¶ 57, 59, 66; *see also* D.I. 28-1 at 66–136 (hereinafter "LP Agreement"))[6]

In November of 2016, Kao became aware that Plaintiff was under investigation by the Financial Industry Regulatory Authority ("FINRA"). (FAC at ¶ 63) Therefore, Kao allegedly drafted the Operating Agreement so that the Individual Defendants would each be enriched through the forfeiture of Plaintiff's financial and ownership interests in the CB Entities in the

---

[6] The Operating Agreement and LP Agreement are not attached to the FAC. However, because these contracts are integral to Plaintiff's claims and are repeatedly referenced in the FAC, the court has considered them for purposes of its recommendations on the pending motions. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, [the court] may consider . . . any matters incorporated by reference or integral to the claim . . . ." (quotation marks omitted)).

3

event of a final and non-appealable felony conviction. (*Id.* at ¶¶ 71–74)  Namely, Kao drafted a

provision triggering forfeiture of a member's ownership interest in the event that member's

employment with Management Corp.-DE was terminated for "Cause[.]"  (*Id.* at ¶ 71)  The

Operating Agreement provides in relevant part:

> [I]f [Management Corp.-DE] terminates the employment or consultancy of a
> Member . . . for Cause, whether before, on or after the full vesting date thereof, all
> of the Class A Units and/or Class B Units owned by the respective Member
> . . . shall be treated as Non-Vested Class A Units or Class B Units (as applicable)
> and shall be automatically forfeited and cancelled as of the date of the termination
> of employment or consultancy of the Member . . . with [Management Corp.-DE]
> for "Cause" . . . .

(Operating Agreement § 6.5(c))  In the Operating Agreement, Cause was defined as "(c) the

commission of any activity pertaining to . . . any other Member . . . that constitutes fraud or a

felony (as determined by a court of competent jurisdiction in a final, non-appealable judgment or

in a final non-appealable arbitration)."  (*Id.* § 1.1)  Kao also drafted a provision for forfeiture of a

member's entire interest in Capital Partners-LLC-DE if that member ceased to be an employee or

consultant of Management Corp.-DE prior to October 23, 2019.  (FAC at ¶ 72)  The relevant

portion of the Operating Agreement states:

> (a) The Class A Units shall be subject to a tenure-based vesting schedule and risk
> of forfeiture as follows:
>
> (i) Subject to Section 6.5(c) below, 50% of the Class A Units of such Member shall
> vest and become non-forfeitable on the third anniversary of the Effective Date
> . . . provided that such Member . . . is still an employee of, or consultant to,
> [Management Corp.-DE] on such third anniversary date; . . . .
>
> (iii) If such Class A Member ceases to be an employee of, or consultant to,
> [Management Corp.-DE] on or prior to the full vesting of Class A Units hereunder
> for any reason (whether voluntarily or involuntarily), that portion of his or her Class
> A Units that has not vested under this Section 6.5(b) as of the effective date of his
> or her termination of employment or cessation of consultancy with [Management
> Corp-DE] . . . shall be automatically forfeited and cancelled as of the date of such
> termination or cessation.

4

(Operating Agreement at §§ 6.5(a)(i), (iii)) Kao allegedly had a conflict of interest because he drafted these provisions while allegedly acting as Plaintiff's attorney and as a co-member with his client in the business operations of the CB Entities. (*See, e.g.*, FAC at ¶¶ 34–36)

Plaintiff and the Individual Defendants executed the Operating Agreement on December 23, 2016, but its effective date was stated as October 18, 2016. (*Id.* at ¶ 69; *see also* D.I. 28-1 at 31)[7] Plaintiff transferred a 20% ownership interest in Capital Partners-LLC-DE and Management Corp.-DE to each Individual Defendant, leaving Plaintiff with a 40% ownership interest in both. (FAC at ¶ 68) The Individual Defendants each made a capital contribution of $3,030,303.03. (*See id.* at ¶ 70) Plaintiff's capital contribution was $9,090,909.09. (*Id.*) Prior to the events allegedly stripping Plaintiff of his financial and ownership interests in the CB Entities, Plaintiff was an employee of Management Corp.-DE, a "Key Person" under the LP Agreement, and an authorized signatory on all of the CB Entities' bank accounts. (*See id.* at ¶¶ 128–31)

On September 1, 2017, Plaintiff was criminally charged with securities fraud in the Southern District of New York as a result of the FINRA investigation. (*Id.* at ¶ 84; *see also United States v. Chow*, Case No. 1:17-cr-00667-GHW D.I. 1) On April 24, 2018, Plaintiff was found guilty of insider trading. (*See* FAC at ¶ 86; *see also United States v. Chow*, Case No. 1:17-cr-00667-GHW at D.I. 113)[8]

Between August and October of 2018, the Individual Defendants unsuccessfully attempted to secure Plaintiff's voluntary divestment of ownership in the CB Entities. (*See* FAC at ¶¶ 119–23) Until Plaintiff's felony conviction became final and non-appealable, his

---

[7] Kuo officially joined the CB Entities in April of 2017. (FAC at ¶ 69 n.1)
[8] Plaintiff appealed his conviction in the Southern District of New York to the Second Circuit on February 5, 2019. (FAC at ¶ 86) His conviction was affirmed on April 6, 2021. (*Id.*)

ownership interests could not be forfeited for "Cause[.]"  (*See* Operating Agreement § 1.1)

Therefore, on October 8, 2018, allegedly to effectuate forfeiture, the Individual Defendants

executed a "Written Consent of the Stockholders of [Management Corp.-DE]" implementing a

recommendation of the Board of Directors of Management Corp.-DE for a stock vesting

schedule.  (FAC at ¶ 124)  Pursuant to the schedule, stock would not vest until September 14,

2019, and if a stockholder "'cease[d] to be an employee of, or consultant to, [Management

Corp.-DE] on or prior to the full vesting of Common Stock . . . for any reason', the non-vested

stock would be forfeited."  (*Id.*)  The next day, Plaintiff was terminated from his employment

with Management Corp.-DE, thus triggering forfeiture of his ownership interest.  (*Id.* at ¶¶ 126–

27)  The Individual Defendants also removed Plaintiff as a signatory to the CB Entities' bank

accounts and passed a supplement to the LP Agreement removing Plaintiff as a "Key Person[.]"

(*Id.* at ¶¶ 129–31)

Allegedly to prevent Plaintiff from recovering his financial interests in the CB Entities,

the Individual Defendants authorized the change of domicile for Capital Partners-LLC-DE and

Fund-DE from Delaware to the Cayman Islands and authorized the required filings with the

Delaware Secretary of State on May 16, 2019, and May 28, 2019, respectively.  (*Id.* at ¶¶ 3, 132–

33)  Also in May of 2019, the Individual Defendants founded Defendant Canyon Bridge Capital

Management, LLC, which became the surviving entity following its merger with Management

Corp.-DE on June 18, 2019.  (*Id.* at ¶ 22)

## B. Procedural History

On October 8, 2021, Plaintiff filed this action in the Delaware Court of Chancery and

filed the FAC on June 10, 2022.[9]  (D.I. 1-1 at 7–29, 46–100)  The FAC asserts ten (10) counts:

- Count I asserts deceit under California law, Cal. Civ. C. §§ 1709–10, against Kao (FAC at ¶¶ 134–42);

- Count II asserts constructive fraud against Kao (*id.* at ¶¶ 143–48);

- Count III asserts unjust enrichment against the Individual Defendants (*id.* at ¶¶ 149–55);

- Count IV asserts breach of fiduciary duty against Kao regarding his conflicts of interest as Plaintiff's attorney (*id.* at ¶¶ 156–59);

- Count V asserts aiding and abetting a breach of fiduciary duty against Bingham and Kuo (*id.* at ¶¶ 160–64);

- Count VI asserts breach of the implied covenant of good faith and fair dealing against Management LLC-DE, Capital Partners-CI, and the Individual Defendants (*id.* at ¶¶ 165–67);

- Counts VII and VIII assert fraudulent transfer under California law, Cal. Civ. C. § 3439, and common law, respectively, against all Defendants (FAC at ¶¶ 168–85);

- Count IX asserts breach of contract against Capital Partners-CI (*id.* at ¶¶ 186–90);

- Count X asserts breach of fiduciary duty against the Individual Defendants and Management Corp.-DE for duties they owed to Plaintiff as a stockholder or member of Capital Partners-LLC-DE (*id.* at ¶¶ 191–99).[10]

(D.I. 1-1 at 46–100)

On July 18, 2022, Defendants timely removed this case to the District of Delaware.  (*See*

D.I. 1)  On July 25, 2022, the Cayman Entities and the Individual Defendants filed a motion to

---

[9] The original complaint asserted three counts:  Count I asserted breach of contract against Capital Partners-CI; Count II asserted breach of fiduciary duty against the Individual Defendants; and Count III asserted declaratory judgments against all Defendants.  (D.I. 1-1 at 7–29)

[10] The FAC erroneously lists Management Corp.-DE as a defendant in Count X, even though Management Corp.-DE no longer exists and is not named in the pleading.  (*See* FAC at ¶¶ 22, 191–99)

dismiss for insufficiency of service of process and lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2). (D.I. 12) On the same date, Management LLC-DE filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. (D.I. 15) On September 30, 2022, Plaintiff filed a motion for leave to file a sur-reply brief regarding the motion to dismiss pursuant to Rules 12(b)(5) and 12(b)(2). (D.I. 35) Briefing was completed for all pending motions on October 21, 2022, and all are ripe for review. (*See* D.I. 37)

The motions were referred by the District Judge to the undersigned Magistrate Judge on January 24, 2024. (D.I. 40) Oral argument was held on March 6, 2024. (D.I. 41; D.I. 45)

## II. THE CAYMAN ENTITIES' MOTION TO DISMISS PURSUANT TO RULE 12(b)(5)

### A. Legal Standard

A defendant may move to dismiss a claim if the plaintiff does not properly serve the defendant with process. Fed. R. Civ. P. 12(b)(5). "In resolving a motion under Rule 12(b)(5), the party making service has the burden of demonstrating its validity when an objection to service is made." *Martin v. OSHA*, 2017 WL 1326212, at *2 (E.D. Pa. Apr. 11, 2017).

### B. Discussion

It is undisputed by the parties that 6 *Del. C.* §§ 18-216(e)(6) and 17-219(e)(6) govern the method of service of process on a foreign limited liability company and limited partnership, respectively. The process is the same under both statutes and requires service upon the Delaware Secretary of State as the agent of the foreign entity. §§ 18-216(e)(6); 17-219(e)(6).

The Cayman Entities argue that service upon them was defective because Plaintiff purported to serve the Delaware Secretary of State pursuant to 6 *Del. C.* § 17-109, which governs service of process on a general partner or liquidating trustee of a Delaware limited partnership.

8

(D.I. 13 at 8–10; *see also* D.I 1-1 at 240–41, 245–46)  The Cayman Entities also argue that service of process was insufficient because Plaintiff listed the Secretary of State's address on the summons, rather than the address of each Defendant in the Cayman Islands.  (D.I. 30 at 2)

In his letter to the Register in Chancery directing service upon the Secretary of State, Plaintiff incorrectly cited to Section 17-109.  (*See* D.I 1-1 at 240–41, 245–46)  Nonetheless, the record demonstrates that, despite the citation error in the cover letter, the actual summonses identified the correct statutes.  (*Id.* at 217–21; D.I. 28-1 4–11)  Therefore, the service of process requirement of the applicable statutes was satisfied.

Service was made on the Secretary of State on June 22, 2022.  (*E.g.*, D.I. 1-1 at 218, 221)  The Secretary of State then transmitted the summons and FAC by registered mail, with a return receipt requested, to the address provided by Plaintiff for each entity's last known principal place of business in the Cayman Islands.  (*See* D.I. 34)

Following the completion of briefing on this motion, on September 29, 2022, Plaintiff docketed the return receipts dated July 20, 2022, signed by each of the Cayman Entities, as proof of completion of service upon them.  (*See id.* at 1–6)  Plaintiff also sought leave to file a sur-reply to the Defendants' motion so he could further address proof of service.  (D.I. 35)  Defendants oppose Plaintiff's motion.  (D.I. 36)

Defendants' argument on the sufficiency of service of process might have been avoided had the return of service of the registered mail receipts been docketed earlier.  Nonetheless, there can be no dispute that the Cayman Entities received notice of the instant suit from the Secretary of State by registered mail.  Furthermore, there is no need for any additional argument elaborating on proof of service, so the court recommends that Plaintiff's motion for leave to file a sur-reply brief (D.I. 35) be **DENIED AS MOOT**.

Therefore, because the court finds that service of process on the Cayman Entities was perfected in accordance with the applicable statutes, Sections 18-216(e)(6) and 17-219(e)(6), it recommends that the Cayman Entities' motion to dismiss the complaint for insufficiency of service pursuant to Rule 12(b)(5) be **DENIED**.

## III.   THE CAYMAN ENTITIES AND THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Defendants argue that they are not subject to personal jurisdiction in Delaware.  (D.I. 12)  Plaintiff asserts that personal jurisdiction is proper over the Cayman Entities pursuant to 6 *Del. C.* §§ 18-216 and 17-219 and over the Individual Defendants pursuant to 6 *Del. C.* § 18-109 and 10 *Del. C.* § 3114.  (FAC ¶¶ 48–49)

### A.  Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant.  When reviewing a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Turner v. Prince George's Cnty. Pub. Schs.*, 694 F. App'x 64, 66 (3d Cir. 2017) (quotation marks omitted).  To meet this burden, the plaintiff may produce "sworn affidavits or other competent evidence" outside the pleadings. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).  "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

10

"[T]he requirement that a court have personal jurisdiction is a 'waivable right,' and a defendant may consent to the jurisdiction of the court." *Truinject Corp. v. Nestlé Skin Health, SA*, 2019 WL 6828984, at *8 (D. Del. Dec. 13, 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).

Absent consent, "[t]o exercise personal jurisdiction over a defendant, a court generally must answer two questions:  one statutory and one constitutional." *Id.* "The statutory inquiry requires the court to determine whether jurisdiction over the defendant is appropriate under the long-arm statute of the state in which the court is located." *Id.* (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).  Delaware's long-arm statute requires a showing of specific jurisdiction arising from the defendant's activities within the forum state, or general jurisdiction based on continuous or systematic contacts with the forum state. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991); *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 622 (D. Del. 2015); *see also* 10 *Del. C.* § 3104(c). The court must then determine whether the exercise of personal jurisdiction comports with due process by analyzing whether the plaintiff has demonstrated that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

## B. Personal Jurisdiction Over the Cayman Entities

Although the Cayman Entities agree that Sections 18-216(e)(6) and 17-219(e)(6) govern service of process, they dispute that the statutes provide the basis for the exercise of personal jurisdiction over them by consent. (*E.g.*, D.I. 13 at 11–14)  The statutes provide as follows:

(e) If a limited liability company shall convert in accordance with this section to another entity or business form organized, formed or created under the laws of a

11

jurisdiction other than the State of Delaware, a certificate of conversion to non-Delaware entity executed in accordance with § 18-204 of this title, shall be filed in the office of the Secretary of State in accordance with § 18-206 of this title.  The certificate of conversion to non-Delaware entity shall state: . . . .

(6) The agreement of the limited liability company that it may be served with process in the State of Delaware in any action, suit or proceeding for enforcement of any obligation of the limited liability company arising while it was a limited liability company of the State of Delaware, and that it irrevocably appoints the Secretary of State as its agent to accept service of process in any such action, suit or proceeding; . . . .

(g) The conversion of a limited liability company out of the State of Delaware in accordance with this section and the resulting cessation of its existence as a limited liability company of the State of Delaware pursuant to a certificate of conversion to non-Delaware entity shall not be deemed to affect any obligations or liabilities of the limited liability company incurred prior to such conversion or the personal liability of any person incurred prior to such conversion, nor shall it be deemed to affect the choice of law applicable to the limited liability company with respect to matters arising prior to such conversion.

6 *Del. C.* § 18-216(e)(6), (g), *accord* § 17-219(e)(6), (g) (in the context of a Delaware limited partnership).

The Cayman Entities correctly point out the purpose of service of process as noted by the United States Supreme Court in *Henderson v. United States*, 517 U.S. 654 (1996), wherein the Court ruled that "the core function of service is to supply notice of the pendency of a legal action" that affords the defendant a fair opportunity to prepare a defense to the claims asserted against it. *Id.* at 672; (D.I. 13 at 12)  In *Henderson*, the Court determined that Rule 4 of the Federal Rules of Civil Procedure displaced any other time period for perfecting service of process pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30901,[11] under which the plaintiff sued. *Henderson*, 517 U.S. at 672.  *Henderson* did not address personal jurisdiction pursuant to

---

[11] The Suits in Admiralty Act was formerly cited as 46 U.S.C. App. § 742.

12

consent statutes such as the ones at issue in the instant case, nor did either side include in their briefing any Supreme Court authority addressing such statutes.

A consent statute was reviewed most recently in *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), where the Supreme Court held that a Pennsylvania statute requiring out-of-state corporations to consent to personal jurisdiction in Pennsylvania courts as a condition of registering to do business in that jurisdiction, did not violate the Due Process Clause of the Fourteenth Amendment. *E.g.*, *id.* at 125–26. In *Mallory*, a Virginia resident, claiming benefits pursuant to a federal workers' compensation statute, brought suit in Pennsylvania against his former employer, Norfolk Southern, which was also incorporated and headquartered in Virginia. *Id.* at 126–27. Based upon the Pennsylvania statute, the Court found Norfolk Southern had consented to suit in Pennsylvania on Mallory's claims. *Id.* at 136–45.

Here, the Cayman Entities argue, without citation to authority, that the statutes at issue apply to only the technical formalities for giving notice of a lawsuit to a foreign limited liability company or limited partnership and stop short of conferring personal jurisdiction over the entity by consent. (D.I. 13 at 11–13; D.I. 30 at 7–8) Similar arguments were asserted and rejected by the Court in *Mallory* based upon long-standing precedent established in *Pennsylvania Fire Insurance Co. v. Gold Issue Mining and Milling Co.*, 243 U.S. 93 (1917). *Mallory*, 600 U.S. at 134–36. Pennsylvania Fire was an insurance company incorporated in Pennsylvania. *Id.* at 131. It executed a contract in Colorado to insure a commercial property that was owned by its insured, an Arizona corporation. *Id.* The Colorado property was destroyed by fire, and the insured sued Pennsylvania Fire in Missouri to collect under the policy. *Id.* at 132. The Supreme Court held that Pennsylvania Fire had consented to personal jurisdiction in Missouri based on a Missouri law which required foreign insurers who transacted business in the state to agree to the

13

appointment of a state official to serve as the insurer's agent for service of process and to accept

service on that official as valid in any suit. *Id.* at 133–34; *see also Pa. Fire*, 243 U.S. at 95.

The statutes at issue in the instant case contain the same requirements as the Missouri

statute in *Pennsylvania Fire*. Here, the Cayman Entities agreed to the appointment of the

Delaware Secretary of State to serve as their agent for service of process and to accept service on

that official as valid "in any action, suit or proceeding for enforcement" of any obligation arising

while they were Delaware entities. §§ 18-216(e)(6); *accord* 17-219(e)(6). The *Mallory* Court

rejected the view that such requirements amounted to "a raft of meaningless formalities" and

reasoned:

> Taken seriously, this argument would have us undo not just *Pennsylvania Fire* but
> a legion of precedents that attach jurisdictional consequences to what some might
> dismiss as mere formalities. . . .
>
> The truth is, under our precedents a variety of "actions of the defendant" that may
> seem like technicalities nonetheless can "amount to a legal submission to the
> jurisdiction of a court." That was so before *International Shoe*, and it remains so
> today.

600 U.S. at 144–46 (citations omitted).

Based upon *Mallory* and its affirmation of *Pennsylvania Fire*, the court recommends that

the Cayman Entities consented to personal jurisdiction in Delaware for alleged liabilities arising

prior to their conversion. Therefore, the motion to dismiss the FAC based on lack of personal

jurisdiction pursuant to Rule 12(b)(2) should be **DENIED**.

### C.  Personal Jurisdiction Over the Individual Defendants

Unlike the Cayman Entities, the Individual Defendants do not challenge the sufficiency

of service of process. (*See* D.I. 13) They were served with the pleadings pursuant to 6 *Del. C.*

§ 18-109, which provides for service of process on managers of a limited liability company, and

10 *Del. C.* § 3114, which provides for service of process on nonresident directors or officers of

14

Delaware corporations. § 18-109(a); § 3114(a); (*e.g.*, D.I. 1-1 at 182–85)  The statutes provide

for service of process on the registered agent of the entity or, if none, the Secretary of State.

§ 18-109(a); § 3114(a).

 The Individual Defendants argue that the statutes provide only for service of process on

nonresidents and do not operate to confer personal jurisdiction by consent.  (D.I. 13 at 11–14)

Plaintiff argues that Sections 18-109 and 3114 operate as consent statutes and that the Individual

Defendants consented to personal jurisdiction in Delaware by accepting positions as managers of

a Delaware LLC and/or directors of a Delaware corporation.  (D.I. 27 at 10–14)

### 1. *6 Del. C.* § 18-109

 Section 18-109 provides that managers of Delaware limited liability companies may be

served with process and subject to personal jurisdiction through their implied consent.  The

scope of implied consent to personal jurisdiction under Section 18-109 was thoroughly analyzed

by the Court of Chancery in *Next Level Ventures, LLC v. AVID USA Technologies LLC*, 2023

WL 3141054 (Del. Ch. Mar. 16, 2023).  Relying on the statute's plain language, the court found

that, because the statute is written in the disjunctive, it applies to claims that relate to the

business of the limited liability company, even if they do not allege breaches of fiduciary duty or

relate to the LLC's internal affairs. *Id.* at *20.

 In the instant case, to fall within the plain language of the statute, Plaintiff's claims must

"relat[e] to the business of the limited liability company or a violation by the manager . . . of a

duty to the limited liability company *or any member of the limited liability company . . . .*" § 18-

109(a) (emphasis added).

 For purposes of the statute:

[T]he term "manager" refers (i) to a person who is a manager as defined in [6 *Del. C.*] § 18-101 of this title and (ii) to a person, whether or not a member of a limited

liability company, who, although not a "manager" as defined in § 18-101 of this title, participates materially in the management of the limited liability company . . . .

*Id.* Pursuant to Section 18-101(12), the term manager "means a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed . . . ."

In *Next Level Ventures*, the dispute centered on whether the individual defendants were actual or de facto managers of the LLC, and, therefore, subject to personal jurisdiction in Delaware under Section 18-109. 2023 WL 3141054, at *21–22. The court determined that managing the day-to-day operations of an LLC is sufficient to be deemed a manager under Section 18-109(a)(ii). *Id.* The court found the following activities relevant to its determination that the individual defendants acted as managers: directing an amendment to the LLC's certificate of formation; dictating the website content of the business; serving as a point of contact for the LLC's lenders; and directing personnel in the areas of marketing, engineering, and other operations. *Id.* at *22.

Here, the Individual Defendants dispute that Plaintiff has plausibly pleaded that they are managers for purposes of Section 18-109(a)(ii). (D.I. 13 at 12 n.7; D.I. 30 at 5) It is undisputed that Management Corp.-DE was the named manager of Capital Partners-LLC-DE. (FAC at ¶ 23; *see also* D.I. 13) It is further undisputed that Plaintiff and the Individual Defendants were the four directors of Management Corp.-DE. (*See, e.g.*, FAC at ¶¶ 24, 67–68; *see also* D.I. 13)[12]

---

[12] Plaintiff, Kao, and Bingham all personally signed the Operating Agreement in their capacities as members of Capital Partners-LLC-DE. (*See* D.I. 28-1 at 64) Bingham also signed the Operating Agreement on behalf of Management Corp.-DE as its president. (*Id.*) Kuo joined the CB Entities in April of 2017. (FAC at ¶ 69 n.1)

16

Plaintiff argues, therefore, that the Individual Defendants must be considered managers of Capital Partners-LLC-DE for purposes of Section 18-109(a)(ii). (*See* FAC at ¶ 23; D.I. 27 at 4)

In their opening brief, the Individual Defendants failed to argue that each of them do not meet the definition of "manager" under the statute. Instead, they dropped a footnote stating, without more, that the argument is a legal conclusion. (D.I. 13 at 12 n.7) As such, the argument raised in a footnote is not properly before the court and is, therefore, waived. *John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

Plaintiff cites to paragraphs 49, 68, 71–75, 106–11, 120, and 128–32 of the FAC as examples of factual support for the Individual Defendants acting as de facto managers of Capital Partners-LLC-DE. (D.I. 27 at 13) These paragraphs state that the Individual Defendants acted as managers of Capital Partners-LLC-DE, (FAC at ¶ 49), detail each Individual Defendants' ownership percentage in the CB Entities, (*id.* at ¶ 68), explain how Kao inserted language detrimental to Plaintiff's interests in the Operating Agreement, (*id.* at ¶¶ 71–75, 106–11), and how the Individual Defendants used their management authority to oust Plaintiff and preclude him from participating in management decisions with the CB Entities (*id.* at ¶¶ 120, 128–32).

In their reply brief, the Individual Defendants fail to respond to Plaintiff's plausible examples of how they acted as managers of Capital Partners-LLC-DE. (*See* D.I. 30 at 5–7) Instead, the Individual Defendants conflate the jurisdictional due process analysis with conclusory arguments denying that their activities alleged in the FAC are sufficient for them to be deemed managers for purposes of the statute. (*See id.*)

Moreover, the Individual Defendants rely upon *Hartsel v. Vanguard Group, Inc.*, 2011 WL 2421003 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del. 2012), in furtherance of their

17

argument that Section 18-109 applies only to duties the manager owes to the LLC, not to other members. (D.I. 13 at 13–14) The Individual Defendants' narrow construction of Section 18-109(a) is contrary to the plain language interpretation the court applied in *Next Level Ventures*. *See* 2023 WL 3141054, at *20.

In the instant case, to fall within the plain language of Section 18-109, Plaintiff's claims must "relat[e] to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company *or any member of the limited liability company* . . . ." § 18-109(a) (emphasis added). Plaintiff argues that his claims fall within Section 18-109 because he has alleged that the Individual Defendants breached fiduciary and other duties they owed as managers of Capital Partners-LLC-DE to Plaintiff as a member. (D.I. 27 at 13–14) Plaintiff's argument is consistent with the plain language interpretation of the disjunctive language of the statute, consistent with the approach in *Next Level Ventures*. *See* 2023 WL 3141054, at *20.

Nonetheless, the determination that the Individual Defendants acted as managers of Capital Partners-LLC-DE for purposes of Section 18-109 does not end the jurisdictional inquiry. The court in *Next Level Ventures* ruled that even if a claim falls within the plain meaning of Section 18-109, a defendant is not subject to personal jurisdiction unless the exercise of personal jurisdiction comports with due process. *Id.* at *21. The court found the due process inquiry particularly important for claims that do not relate to the LLC's internal affairs. *Id.*[13]

To satisfy due process, a defendant must have sufficient minimum contacts with Delaware such that he should reasonably anticipate having to defend himself in a Delaware

---

[13] In *Next Level Ventures*, the court did not need to conduct a due process inquiry because the defendants conceded that due process was satisfied if the court determined they acted as managers of the LLC. 2023 WL 3141054, at *22 (Del. Ch. Mar. 16, 2023).

court, consistent with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Due process may also be satisfied for purposes of Section 18-109 where:

> (1) [T]he allegations focused on the defendant's rights, duties, and obligations as the manager of a limited liability company, (2) the matter was inextricably bound up in Delaware law, and (3) Delaware has a strong interest in providing a forum for disputes relating to the actions of managers of a limited liability company formed under its law in discharging their managerial functions.

*Next Level Ventures*, 2023 WL 3141054, at *21 (quotation marks omitted).

In their briefing, the parties combined the jurisdictional due process analysis under Section 18-109 and its corporate analogue, 10 *Del. C.* § 3114; therefore, the court will address the due process component in the discussion of Section 3114 in the following section.

### 2. 10 *Del. C.* § 3114

Pursuant to 10 *Del. C.* § 3114(a):

> Every nonresident of [Delaware] who . . . accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of [Delaware] or who . . . serves in such capacity . . . shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in [Delaware], by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of a duty in such capacity, whether or not the person continues to serve as such director, trustee or member at the time suit is commenced.

The only issue the parties dispute is whether personal jurisdiction over the Individual Defendants is consistent with due process. The Individual Defendants contend that the only connection they have to Delaware is the place of incorporation of the CB Entities (or their predecessors), which is insufficient to satisfy the minimum contacts requirement. (D.I. 30 at 4–5) Plaintiff contends that as directors and officers of Management Corp.-DE, the Individual

Defendants purposely availed themselves of the duties and protections under Delaware law such

that they should reasonably anticipate being sued in Delaware. (*See* D.I. 27 at 11–12; *see also*

FAC at ¶ 49)  The Individual Defendants argue against an unconstitutionally broad application of

Section 3114, relying on *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970 (Del. Super.

Ct. Oct. 11, 2017), and *BAM Int'l, LLC v. MSBA Group Inc.*, 2021 WL 5905878 (Del. Ch. Dec.

14, 2021) (hereinafter "*BAM*").  (*See* D.I. 30 at 4–5)

   As the Delaware Supreme Court explained in *Hazout v. Tsang Mun Ting*, 134 A.3d 274

(Del. 2016), utilizing a minimum contacts due process analysis helps to ensure the statute is not

applied too broadly. *E.g.*, *id.* at 278.  There, the plaintiff, a resident of Hong Kong, sued Hazout,

a resident of Canada, after Hazout illicitly transferred funds paid by the plaintiff for the capital

infusion of a Delaware corporation, headquartered in Canada, to Hazout's own private company.

*Id.* at 280–84.  The Delaware Supreme Court concluded that personal jurisdiction over Hazout

was proper because "the claims against Hazout involve[d] his actions in his official capacity of

negotiating contracts that involved the change of control of a Delaware public corporation." *Id.*

at 293.  The court found it significant that the contracts at issue also incorporated Delaware law

as their "language of commerce[.]" *Id.*

   The Individual Defendants argue that due process is not satisfied because Plaintiff's

claims have no ties to Delaware.  (D.I. 30 at 4 (citing *Turf Nation*, 2017 WL 4535970, at *9

(finding that personal jurisdiction does not comport with due process if there is not a rational

connection to Delaware other than as the place of incorporation of the subject corporation)))  In a

footnote, the Individual Defendants rely on *BAM* in support of their argument that including a

Delaware choice of law provision in a contract is not enough to support personal jurisdiction

under Section 3114.  (*Id.* at 4 n.2)

The court does not find the Individual Defendants' argument persuasive because *Turf Nation* and *BAM* did not involve circumstances where the formation of the Delaware entity was connected to the alleged wrongdoing, as in the instant case. *See Illumina, Inc. v. Guardant Health, Inc.*, 2023 WL 1407716 (D. Del. Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2867219 (D. Del. Mar. 29, 2023).

In *Illumina*, Judge Burke thoroughly analyzed the decisions in *Hazout*, *Turf Nation*, and *BAM* in reaching his decision that the minimum contacts due process analysis under Section 3114 was satisfied where the nonresident individual defendants anonymously incorporated an entity in Delaware for the purpose of enabling that entity to wrongfully obtain patents the defendants had assigned to the Delaware corporation after allegedly misappropriating the plaintiff's confidential information. *See id.* at *14–16.

In *Illumina*, the court found that the plaintiff pleaded enough contacts to satisfy due process, even though it was not a "clear-cut call[.]" *Id.* at *16. The court found that, although the individual defendants were residents of California, the pertinent acts took place in California, and California law governed at least some of the claims at issue, personal jurisdiction in Delaware was proper because the individual defendants were "alleged to have founded Guardant—and incorporated it in Delaware—at least partially for the purpose of enabling the corporation to wrongfully obtain various patents[.]" *Id.*

Here, as in *Illumina*, the jurisdictional due process analysis presents a close call. The CB Entities maintained their principal places of business in California. (FAC at ¶¶ 18, 21, 25) The FAC avers that California law applies to certain claims, (*see id.* at ¶¶ 142, 170), and most of the relevant acts took place in California. (*Id.* at ¶ 4) But taken as a whole, the facts as alleged in the FAC are sufficient to plausibly state that the Individual Defendants engaged in Delaware-

focused conduct and used Delaware law as their "language of commerce" in the Operating

Agreement and LP Agreement, *Hazout*, 134 A.3d at 293, to benefit themselves in effectuating a

change of ownership, control, and financial stake in the CB Entities, to merge Management

Corp.-DE into the surviving Management LLC-DE, and convert the domicile of Capital Partners-

LLC-DE and Fund-DE to an offshore domicile in the Cayman Islands in furtherance of their plan

to wrongfully take for themselves Plaintiff's ownership, equity, and financial interests in the CB

Entities. (*See* D.I. 1-1 at 46–100) Thus, the Individual Defendants cannot fairly say that they

did not foresee having to litigate over these transactions in a Delaware court such that requiring

them to defend against Plaintiff's claims in a Delaware court would offend traditional notions of

fair play and substantial justice.

Thus, the court finds that the Individual Defendants have sufficient minimum contacts to

Delaware such that the exercise of personal jurisdiction over them in Delaware comports with

constitutional due process. Accordingly, the court recommends that the Individual Defendants'

motion to dismiss pursuant to Rule 12(b)(2) be **DENIED**.

### D. The Conspiracy Theory of Personal Jurisdiction

Alternatively, Plaintiff argues that personal jurisdiction over the Individual Defendants

pursuant to the conspiracy theory of personal jurisdiction comports with due process.[14] (*E.g.*,

FAC at ¶ 49; D.I. 27 at 17–20)

Under this theory, the presence of personal jurisdiction over one conspirator who

committed an improper act in Delaware or caused injury in the forum may result in the court's

---

[14] In his answering brief, Plaintiff argues that specific jurisdiction over the Individual Defendants
exists pursuant to Section 3104(c)(1) of the Delaware Long Arm Statute relating to a nonresident
who "transact[s] any business or performs any character of work or service" in the forum. (D.I.
27 at 16–18) Plaintiff abandoned this theory at oral argument. (D.I. 45 at 27:7–28:10)

exercise of personal jurisdiction over co-conspirators who would not otherwise be subject to jurisdiction in Delaware. *See, e.g., Istituto Bancario Italiano SpA v. Hunter Eng'g Co., Inc.*, 449 A.2d 210, 225–27 (Del. 1982); *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012).

"At the pleading stage, a plaintiff need not 'produce direct evidence of a conspiracy' but must assert 'specific facts from which one can reasonably infer that a conspiracy existed.'" *In re Tilray, Inc.*, 2021 WL 2199123, at *19 (Del. Ch. June 1, 2021) (quoting *Reid v. Siniscalchi*, 2014 WL 6589342, at *6 (Del. Ch. Nov. 20, 2014)).

The Supreme Court of Delaware has articulated the following standard for establishing personal jurisdiction pursuant to a conspiracy theory:

> [A] conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Istituto Bancario*, 449 A.2d at 225. "The first three *Istituto Bancario* elements address the statutory prong of the test. The fourth and fifth *Istituto Bancario* elements address the constitutional prong of the test." *Virtus Cap. L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *12 (Del. Ch. Feb. 11, 2015).

The Individual Defendants argue that the allegations of the conspiracy in the FAC are too general and conclusory to permit the court to assert personal jurisdiction over them. (D.I. 13 at 15) They contend that only the fraudulent transfer counts arguably apply to all Defendants (Counts VII and VIII) and, therefore, are the only claims that could possibly support a conspiracy theory of jurisdiction. (*Id.*) In addition, the Individual Defendants argue that Plaintiff has not

pleaded a "substantial act" or a "substantial effect" in Delaware sufficient to satisfy the remaining prongs for asserting jurisdiction over them pursuant to a conspiracy theory. (*Id.* at 15–16)

Plaintiff's conspiracy theory fails because the law is well settled in Delaware that a corporation generally cannot conspire with its own officers for purposes of establishing personal jurisdiction pursuant to a conspiracy theory. *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC,* 2017 WL 3912632, at *2 (Del. Ch. Sept. 7, 2017); *see also SC Botanicals, LLC v. Intragenix Holdings, LLC,* 2021 WL 2156503, at *5 (D. Del. May 27, 2021).

Plaintiff argues that the court should apply the exception to the rule for acts taken by the officer or agent pursuant to personal motives outside of his role as an officer or agent of the company. (D.I. 27 at 20)  Plaintiff's argument is unavailing because such facts have not been pleaded.  Plaintiff directs the court to the paragraphs in the FAC which aver nothing more than bare allegations of unjust enrichment. (*See id.* (citing FAC at ¶¶ 151–55))  Moreover, Plaintiff has consistently alleged throughout the FAC and in his answering brief that the Individual Defendants acted within their authority as managers, directors, and/or officers of the CB Entities to effectuate the alleged fraudulent transactions at issue.[15] (*See, e.g.,* FAC at ¶¶ 124, 132–33, 195; D.I. 27 at 17)

Therefore, the court recommends that Plaintiff has not pleaded sufficient facts to support personal jurisdiction over the Individual Defendants pursuant to a conspiracy theory.

---

[15] Such allegations, if made, would negate Plaintiff's theory for securing jurisdiction over the Individual Defendants pursuant to Sections 18-109 and 3114. (*See* discussion, *supra*, §§ III.C.1–2)

IV.    **MANAGEMENT LLC-DE'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

### A. Legal Standard

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

25

### B. Discussion

Management LLC-DE moves to dismiss all of the Counts asserted against it in the FAC, Counts VI–VIII and X. (*See* D.I. 16)  None of the other Defendants have joined Management LLC-DE's motion.  Management LLC-DE argues that the statute of limitations for Count VI does not relate back to the date the original complaint was filed, that Counts VI and X are time barred, and that all four Counts against it fail to plausibly state a claim for relief.  (*Id.* at 7–17)

#### 1. Whether Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count VI) Relates Back to the Original Complaint

Plaintiff does not challenge Management LLC-DE's assertion that a three-year statute of limitations applies to Count VI.  (D.I. 26 at 6 n.4)  It is further undisputed that the original complaint was filed in the Court of Chancery on October 8, 2021, one day before the expiration of the statute of limitations.  (*See, e.g.*, D.I. 1-1 at 7–29; *see also* D.I. 16 at 11; D.I. 26)  It is further undisputed that Plaintiff did not serve the original complaint on Defendants.  (*E.g.*, D.I. 26 at 6)

Management LLC-DE argues that the breach of the covenant of good faith and fair dealing claim asserted in Count VI does not relate back to the filing of the original complaint because it asserts a breach of a different provision of the Operating Agreement than those asserted in the original complaint.  (D.I. 16 at 8–10)  The original complaint did not mention Operating Agreement Section 6.5 or its definition of "Cause[.]"  (*See* D.I. 1-1 at 7–29)

Pursuant to Federal Rule of Civil Procedure 15(c), an amended pleading relates back to the date of the original pleading if the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  The Court of Chancery Rule is analogous to the federal rule.  *See* Ct. Ch. R. 15(c)(2).

26

Here, the allegations in the FAC are based on the Operating Agreement, the same

conduct of the parties, and the same series of closely related transactions as in the original

complaint. (*See* D.I. 1-1 at 7–29; FAC) Therefore, this case is distinguishable from *Central*

*Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, 2012 WL 3201139 (Del. Ch.

Aug. 7, 2012), on which Management LLC-DE relies. (D.I. 16 at 9–10) In *Central Mortgage*,

the amended pleading asserted new claims for breach of representations and warranties for

hundreds of new agency loans and thousands of private loans for reasons specific to each loan.

*E.g.*, 2012 WL 3201139, at *12–13. The court found that such amendments did not relate back

to the filing of the original complaint because each sale of loan servicing rights was a separate

and independent transaction such that breach of one contract did not arise out of the same

transaction or occurrence as the breach of a different contract. *Id.* at *17–18.

In the instant case, the dispute centers on the same Operating Agreement at issue in the

original complaint; therefore, the court recommends that Count VI relates back to the original

complaint.

### 2. Whether the Filing of the Original Complaint Tolls the Statute of Limitations for Counts VI and X

Management LLC-DE argues that the original complaint did not toll the three-year statute

of limitations because Plaintiff made no effort to complete service of process on Defendants for

nearly nine months, until the FAC asserting Counts VI and X was filed. (D.I. 16 at 10–13)

Management LLC-DE argues that "placeholder" actions are not permitted under Delaware law,

therefore, the amended pleading is untimely. (*Id.*)

Management LLC-DE has not demonstrated on these facts that a nine-month delay in

filing and serving an amended complaint warrants dismissal of the amended causes of action as

time-barred. When the FAC was filed, the case was still pending in the Court of Chancery. (*See*

27

FAC) Unlike the Federal Rules requiring service of the complaint within ninety (90) days, Fed. R. Civ. P. 4(m), the Court of Chancery Rules recite no fixed period for service of the complaint. *See* Ct. Ch. R. 4. Instead, the court looks to the actions of both parties to determine whether service is untimely. *Hovde Acquisition, LLC v. Thomas*, 2002 WL 1271681, at \*6 (Del. Ch. June 5, 2002). The factors considered by the court include the dilatory conduct of the party obligated to complete service, whether the party to be served had actual notice of the suit, and whether that party was prejudiced by the delay. *Id.*

Management LLC-DE does not dispute that it received notice of the suit after the original complaint was filed. (*See* D.I. 31 at 2–3) Instead, Management LLC-DE objects to the court's consideration of the content of the letters submitted by Plaintiff to demonstrate that Management LLC-DE had notice. (*Id.* at 3 n.2) The court need not consider the content of the letters in addressing the pending motion but finds them sufficient to establish notice.

Moreover, Management LLC-DE also does not argue that it suffered prejudice from the delay but contends that prejudice should be presumed. (*See id.* at 4–5; *see also* D.I. 45 at 35:14–38:15) However, Management LLC-DE's cited authorities for this presumption are distinguishable. *See In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at \*4–5 (Del. Ch. Sept. 27, 2013) (presuming prejudice when a claim is filed past the statute of limitations when the plaintiff did not toll, or attempt to toll, the statute of limitations); *Re IMO Last Will & Testament of Harley*, 2017 WL 4158803, at \*2 (Del. Ch. Sept. 18, 2017) (presuming prejudice in light of "a special public policy in favor of prompt settlement of decedents' estates").

Management LLC-DE fails to explain why the holding in *Hovde* should not be adopted in the instant case. In *Hovde*, the court concluded that "plaintiffs' dilatory efforts to effect service are outweighed by the mitigating factors of actual notice and the lack of prejudice." 2002 WL

1271681, at *7.  The court finds the same holds true in this case and recommends that the statute of limitations was tolled and service of the FAC is not time-barred.

Having determined that Counts VI and X are not time-barred, the court must further consider whether they plausibly state claims against Management LLC-DE for which relief may be granted.

### 3.  Failure to State a Claim

#### a.  Count VI (Breach of the Covenant of Good Faith & Fair Dealing)

"Every contract governed by Delaware law is subject to the implied covenant of good faith and fair dealing." *Truinject Corp. v. Nestlé Skin Health, SA*, 2020 WL 70981, at *13 (D. Del. Jan. 7, 2020), *report and recommendation adopted*, 2020 WL 1270916 (D. Del. Mar. 17, 2020).  "The implied covenant 'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'"  *Id.* (quoting *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015) (quotation marks omitted)).

"To plead a claim for breach of the implied covenant 'a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages.'"  *Zinetti v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 409725, at *10 (D. Del. Jan. 24, 2020) (quoting *Fortis Advisors*, 2015 WL 401371, at *3), *report and recommendation adopted*, 2020 WL 1536092 (D. Del. Feb. 14, 2020).  "[T]he implied covenant only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract." *Alliance Data*

29

*Sys. Corp. v. Blackstone Cap. Partners V L.P.*, 963 A.2d 746, 770 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009).

Management LLC-DE argues that Plaintiff does not identify a gap in the Operating Agreement's terms to be filled by the implied covenant. (D.I. 16 at 15–16)  Plaintiff agrees that he is not asking the court to fill any gap in the Operating Agreement's terms. (D.I. 45 at 52:2–11)  Instead, Plaintiff argues this Count is based on the duty of good faith inherent in every contract. (*Id.*)  As such, Plaintiff concedes that this Count is, in essence, a restatement of the breach of the Operating Agreement. *See Mosiman v. Madison Cos., LLC*, 2019 WL 203126, at *3 (D. Del. Jan. 15, 2019) (noting that a plaintiff "cannot assert a claim for breach of implied covenants of good faith and fair dealing that is based on exactly the same acts which are said to be in breach of express covenants."); *see also Truinject Corp.*, 2020 WL 70981, at *14 ("Because general allegations of bad faith conduct are not sufficient to state a claim, the plaintiff must allege a specific implied contractual obligation and how the violation of that obligation denied the plaintiff the fruits of the contract." (quoting *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *10 (Del. Ch. Dec. 22, 2010))).

Consequently, the court recommends that Management LLC-DE's motion to dismiss Count VI of the FAC pursuant to Rule 12(b)(6) for failure to state a claim be **GRANTED**.

### b.  Count X (Breach of Fiduciary Duty)

"Under Delaware law, [a] claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Gary v. Deluxe Corp.*, 2022 WL 2817864, at *4 (D. Del. July 19, 2022) (alternations in original) (quotation marks omitted).  Management LLC-DE argues that the FAC does not allege any facts regarding Management LLC-DE's specific conduct and that a corporation itself, as opposed to its

30

directors or officers, cannot owe fiduciary duties as a matter of law.  (D.I. 16 at 16–17); *see also In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1135, 1135 n.93 (Del. 2020) (noting that "the corporation itself does not owe fiduciary duties" and collecting cases in support).

Plaintiff concedes that a corporation itself does not owe fiduciary duties.  (D.I. 26 at 17)  Plaintiff argues that Management Corp.-DE owed him fiduciary duties in its capacity as a manager of Capital Partners-LLC-DE.  (*Id.* at 18)

Count X is not asserted against the moving defendant, Management LLC-DE.  (*See* FAC at ¶¶ 191–99)  It is asserted against the three Individual Defendants and Management Corp.-DE, which is not named as a party in the FAC and which no longer exists following the merger.  (*See id.* at ¶¶ 22, 191–99)

Furthermore, the FAC fails to assert any acts undertaken by Management LLC-DE that constitute a breach of fiduciary duty to Plaintiff aside from incorporating by reference the allegations in the previous 190 paragraphs of the FAC.  (*See id.* at ¶¶ 191–99); *see also Fuhrman v. Mawyer*, 2023 WL 5672314, at *15 (M.D. Pa. Sept. 1, 2023) (noting that "while a complaint may incorporate by reference any prior paragraphs that are necessary to pleading a plausible cause of action, [it] may not use the improper expedient of simply incorporating by reference all prior paragraphs . . . since such a practice does not provide adequate notice for purposes of Rule 8." (quotation mark omitted)).

On its face, this Count does not plausibly allege any claim against the moving Defendant.  Accordingly, the court recommends that Management LLC-DE's motion to dismiss Count X pursuant to Rule 12(b)(6) for failure to state a claim be **GRANTED**.

### c. Counts VII and VIII (Fraudulent Transfer)

Plaintiff alleges violations of the California Uniform Fraudulent Transfer Act ("UFTA"),

Cal. Civ. C. § 3439 *et seq.*, in Count VII and fraudulent transfer under common law in Count

VIII, though both Counts utilize the same factors. (*See* FAC at ¶¶ 168–85)  Plaintiff must plead

that a "debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor

of the debtor." § 3439.04(a)(1).[16]  Furthermore, the court looks to a confluence of factors, such

as whether the transfer was concealed, to infer that the intent of the transfer was fraudulent. *See*

§ 3439.04(b); *see also Burkhart v. Genworth Fin., Inc.*, 275 A.3d 1259, 1272 (Del. Ch. 2022)

(noting that the UFTA is a codification of common law fraudulent transfer).

The averments in the pleadings must satisfy the heightened standard of Federal Rule of

Civil Procedure 9(b).  "In alleging fraud . . . a party must state with particularity the

circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Management LLC-DE seeks dismissal of the fraudulent transfer Counts because they do

not aver conduct on the part of each defendant separately but are pleaded in an all-inclusive

manner and contain only conclusory statements. (D.I. 16 at 13–15)  Plaintiff argues that Kao's

actions in converting the CB Entities to the Cayman Entities may be imputed to Management

LLC-DE. (*See* D.I. 26 at 13–16)  But Plaintiff must assert the "precise misconduct" undertaken

by each defendant to satisfy the heightened standard of Rule 9. *Humana, Inc. v. Indivior, Inc.*,

2022 WL 17718342, at *3 (3d Cir. Dec. 15, 2022); *see also Osco Motors Co., LLC v. Marine*

*Acquisition Corp.*, 2014 WL 2875374, at *8 (D. Del. June 24, 2014); *Truinject Corp. v. Nestlé*

---

[16] Both Delaware and California have adopted the Uniform Fraudulent Transfer Act. *See 6 Del.*
*C.* § 1304.

*Skin Health, SA*, 2020 WL 70981, at \*10 (D. Del. Jan. 7, 2020) ("'Under the heightened pleading standard of Rule 9(b), . . . a complaint is not sufficient where a plaintiff bundles together all defendants under a claim of fraud and omits specific allegations regarding who had a duty to disclose and who breached such a duty.'" (alterations in original) (quoting *REI Holdings, LLC v. LienClear – 0001, LLC*, 2019 WL 3546881, at \*6 (D. Del. Aug. 5, 2019))), *report and recommendation adopted*, 2020 WL 1270916 (D. Del. Mar. 17, 2020). This is enough to warrant dismissal of the claims against Management LLC-DE.

Furthermore, the FAC fails to describe any actions undertaken by Management LLC-DE concerning the challenged transactions. (*See* FAC at ¶¶ 132–33, 168–85) Plaintiff relies on a conclusory theory imputing the Individual Defendants' actions to Management LLC-DE without any supporting authority. (*See id.*; *see also* D.I. 26 at 13–16)

Therefore, the court recommends that Management LLC-DE's motion to dismiss Counts VII and VIII of the FAC for failure to state a claim be **GRANTED**.

**4.  Amendment of Pleadings**

Plaintiff argues that in the event the court recommends dismissal of Counts VI–VIII and X, he should, nonetheless, be granted leave to amend his pleadings. (D.I. 26 at 18–19) "Leave to amend should be granted absent a showing of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" *Averill v. Jones*, 152 F. Supp. 3d 265, 266–67 (D. Del. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Management LLC-DE opposes amendment on the basis of futility. (D.I. 31 at 10)

Case 1:22-cv-00947-JLH-SRF   Document 46   Filed 07/22/24   Page 34 of 35 PageID #: 775

Because this is the first time the court has found deficiencies in the pleadings and because it is not clear to the court that allowing an opportunity to amend would be futile, the court finds that Plaintiff should be permitted leave to amend to address the deficiencies outlined in this Report and Recommendation. The court recommends that if the District Judge adopts this Report and Recommendation, Plaintiff be given thirty (30) days to file such an amended complaint.

## V.    CONCLUSION

For the foregoing reasons, the court recommends that:

- The Cayman Entities and the Individual Defendants' Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(2) be **DENIED**;

- Plaintiff's Motion for leave to file a sur-reply brief in response to the Cayman Entities and the Individual Defendants' Motion to Dismiss be **DENIED AS MOOT**; and

- Management LLC-DE's Motion to Dismiss pursuant to Rule 12(b)(6) be **GRANTED WITHOUT PREJUDICE**.

The court further recommends granting Plaintiff's request for an opportunity to amend the pleading consistent with this Report and Recommendation. The amended pleading shall be filed within thirty (30) days in the event the District Judge adopts this Report and Recommendation, otherwise, it shall be subject to the further Order of the District Judge.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  July 22, 2024

Sherry R. Fallon
United States Magistrate Judge