## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BENJAMIN BIN CHOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CANYON BRIDGE CAPITAL PARTNERS, LLC, A Cayman Islands Limited Liability Company, CANYON BRIDGE CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company, CANYON BRIDGE FUND I, LP, a Cayman Islands Limited Partnership, HONG JOHN KAO, HEBER RAYMOND BINGHAM, and PETER CHIN KUO, | ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

C.A. No. 22-00947-JLH-SRF

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
OBJECTION TO REPORT AND RECCOMENDATION**

*Of counsel:*

Daniel F. Markham
Michael Levin
WROBEL MARKHAM LLP
1407 Broadway, Suite 4002
New York, New York 10018
(212) 421-8100

SMITH, KATZENSTEIN & JENKINS LLP

Jason Z. Miller (No. 6310)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
jzm@skjlaw.com
dat@skjlaw.com

*Attorneys for Plaintiff
Benjamin Bin Chow*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I. NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II. SUMMARY OF ARGUMENT ............................................................................... 1

III. STANDARD OF REVIEW ..................................................................................... 2

IV. ARGUMENT ............................................................................................................ 2

    A. Personal Jurisdiction over the Cayman Entities is Proper ....................... 2

    B. Personal Jurisdiction over the Individual Defendants is Proper Via
       6 *Del. C.* § 18-109 and 10 *Del. C.* § 3114 ................................................. 6

       1. Statutory Bases ................................................................................ 6

       2. Due Process ...................................................................................... 8

V. CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Institutional Partners, LLC v. Fairstar Res. LTD.*,
   2011 WL 1230074 (D. Del. Mar. 31, 2011) ................................................................. 10

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987) ......................................................................................................... 3

*Glen v. Trip Advisor LLC*,
   529 F. Supp. 3d 316 (D. Del. 2021) ............................................................................... 4

*Hamilton Partners, L.P. v. Englard*,
   11 A.3d 1180 (Del. Ch. 2010) ........................................................................................ 3

*In re Coinmint, LLC*,
   261 A.3d 867 (Del. Ch. 2021) ........................................................................................ 5

*In re P3 Health Grp. Holdings, LLC*,
   282 A.3d 1054 (Del. Ch. 2022) ...................................................................................... 9

*Jacobs v. Fed. Hous. Fin. Agency*,
   2017 WL 5664769 (D. Del. Nov. 27, 2017) .................................................................. 4

*Jaffe v. Regensberg*,
   1980 WL 3039 (Del. Ch. Jan. 10, 1980) ........................................................................ 1

*Maric Healthcare, LLC v. Guerrero*,
   2024 WL 2993336 (Del. Ch. June 14, 2024) ............................................................ 9, 10

*McMillan v. Nelson*,
   2024 WL 3311812 (Del. Ch. July 5, 2024) .................................................................... 9

*PT China LLC v. PT Korea LLC*,
   2010 WL 761145 (Del. Ch. Feb. 26, 2010) .................................................................. 10

*Ruggiero v. FuturaGene, plc.*,
   948 A.2d 1124 (Del. Ch. 2008) ...................................................................................... 5

*VTB Bank v. Navitron Projects Corp.*,
   2014 WL 1691250 (Del. Ch. Apr. 28, 2014) ................................................................. 3

*Yu v. GSM Nation, LLC*,
   2018 WL 2272708 (Del. Super. Apr. 24, 2018) ....................................................... 1, 10

**Statutes**

6 *Del. C.* § 18-216(e)(6) ............................................................................................................... 5

**Rules**

Fed. R. Civ. P. 72(b)(3) .................................................................................................................. 2

## I. NATURE AND STAGE OF PROCEEDINGS

Pursuant to Fed. R. Civ. P. 72, plaintiff Benjamin Bin Chow ("Plaintiff") opposes the objections ("Objections") filed by defendants to the Magistrate Judge's Report and Recommendation, D.I. 46, ("Report") that the District Court deny the Cayman Entities[1] and the Individual Defendants' (collectively, "Defendants") Motion to Dismiss pursuant to Rule 12(b)(2).

## II. SUMMARY OF ARGUMENT

1. The Report correctly recommended denial of Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (D.I. 46 at 34). Defendants assert that the Report erroneously construed 6 *Del. C.* § 18-216(e) and 6 *Del. C.* § 17-219(e) (the "Statutory Provisions") as establishing consent to personal jurisdiction while those statutes purportedly only act as service of process statutes. D.I. 48 at 3. Defendants' assertion is wrong as 6 *Del. C.* § 18-105 and 6 *Del. C.* § 17-105 both act as service of process statutes for domestic Delaware LLCs and limited partnerships, respectively, and neither of those statutes explicitly reference personal jurisdiction yet they are construed as conferring jurisdiction via consent. *Yu v. GSM Nation, LLC*, 2018 WL 2272708, at *1 n.6 (Del. Super. Apr. 24, 2018) ("It is undisputed that personal jurisdiction exists over GSM and both US Mobile LLC entities. See 6 *Del. C.* § 18–105."). The same is true for 6 *Del. C.* § 18-109 and 10 *Del. C.* § 3114. *Jaffe v. Regensberg*, 1980 WL 3039, at *2 (Del. Ch. Jan. 10, 1980) ("[B]y agreeing to serve as a director of a Delaware corporation, a nonresident consents that service upon his statutory agent *will amount to in personam jurisdiction over him* as to any action filed in the courts of this State arising out of his alleged violation of his duty as a director.") (emphasis added). The Statutory Provisions operate in substantially the same manner and function as consent for entities who convert out of Delaware to still be sued in

---

[1] Undefined capitalized terms used herein shall have the same meaning assigned to them in the Report. D.I. 46.

Delaware for enforcement of an obligation arising when such entity was a Delaware entity (which is precisely the situation here).

        2.      The Report correctly concluded that personal jurisdiction can be exercised over the Individual Defendants pursuant to 10 *Del. C.* § 3114 and 6 *Del. C.* § 18–109.  The Report found that Defendants waived any argument contending that the Individual Defendants are not managers (D.I. 46 at 17), and it is notable that Defendants gloss over that finding.  The Report also correctly found that there were sufficient minimum contacts with Delaware such that the Individual Defendants purposely availed themselves of Delaware and should have reasonably foreseen being haled into Court here.  D.I. 46 at 21-22.  Defendants also err in stating "the Individual Defendants are not even alleged in conclusory fashion to be directors" (D.I. 48 at 8) as those individuals were alleged to be directors of Management Corp.-DE, the predecessor entity of Management LLC-DE. D.I. 1-1 at 9 ¶ 24; 10 ¶ 28; 12 ¶ 40; 13 ¶ 43.

### III.    STANDARD OF REVIEW

A District Court reviews *de novo* a magistrate judge's recommendation.  Fed. R. Civ. P. 72(b)(3).

### IV.    ARGUMENT

#### A.    Personal Jurisdiction over the Cayman Entities is Proper

Plaintiff agrees with Defendants that Sections 18-216(e)(6) and 17-219(e)(6) articulate amenability to service of process, but those provisions also impliedly provide for consent to personal jurisdiction in Delaware, at least insofar as the allegations against the entity pertain to conduct predating its conversion to a foreign entity.

Defendants do not dispute that Capital Partners-CI and Fund-CI, i.e., the Cayman Entities, were both Delaware entities prior to their conversion.  Accordingly, prior to such conversion, there

can be no argument that such entities were amenable to service of process in Delaware via 6 *Del. C.* § 18-105 and 6 *Del. C.* § 17-105, respectively, *and* could be sued generally in the State of Delaware.

It also cannot seriously be disputed that Delaware has an interest in overseeing claims pertaining to entities formed within its jurisdiction. *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *11 (Del. Ch. Apr. 28, 2014) (noting the Court's "fundamental and immutable responsibility to supervise the entities chartered and formed under Delaware law") (footnote omitted). Delaware's interest in overseeing entities formed within its borders is particularly heightened when there are allegations that a Delaware entity has been used in connection with the perpetration of fraudulent conduct. *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1213 (Del. Ch. 2010) ("Delaware has a powerful interest of its own in preventing the entities that it charters from being used as vehicles for fraud. Delaware's legitimacy as a chartering jurisdiction depends on it.") (citation omitted). The United States Supreme Court has acknowledged that States where entities are formed have "a substantial interest in preventing the corporate form from becoming a shield for unfair business dealing." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 93 (1987).

Given the foregoing considerations, i.e., the Cayman Entities were Delaware entities at the time of the wrongdoing alleged in the Complaint and Delaware's strong interest in overseeing the conduct of Delaware entities, it is unreasonable to conclude that Sections 18-216(e)(6) and 17-219(e)(6) do not provide for consent to jurisdiction in Delaware.

Taking Defendants' proffered construction of the Statutory Provisions to its logical conclusion confirms the error of its reasoning. Defendants state "these statutes thereby effect the governed entities' consent to service of process, [but] they say nothing about the propriety of any court exercising personal jurisdiction over them." D.I. 48 at 4. However, the principle that statutes

3

will not be read to produce an absurd result or be construed so as to render the language meaningless perhaps best highlights the error of this perspective. *See, e.g.*, *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 329 (D. Del. 2021) ("In the context of statutory construction, an absurd interpretation is one that defies rationality or renders the statute nonsensical and superfluous.") (citations omitted); *Jacobs v. Fed. Hous. Fin. Agency*, 2017 WL 5664769, at *4 (D. Del. Nov. 27, 2017) ("As a general rule of statutory construction, courts 'strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant.'") (citation omitted). If Defendants' construction of the Statutory Provisions is accurate and those statutes amount to nothing more than service of process provisions, then it begs the question: what purpose do the Statutory Provisions serve? If all the provisions do is authorize the Delaware Secretary of State to serve as agent for the purpose of accepting service of process then the statutes are essentially devoid of any substantive meaning.

There is no discernible purpose served by providing a plaintiff an agent upon whom to serve process in a lawsuit that may not be maintained in that same jurisdiction because the prospective defendant is not subject to personal jurisdiction there. This is especially true when it is borne in mind that the Statutory Provisions will *only* be implicated in instances where a Delaware entity has since converted to a foreign jurisdiction. If the statutes do not constitute consent to personal jurisdiction in Delaware, they serve little rational purpose because a defendant in this scenario is *always* going to be a foreign entity at the time of such service. Thus, absent construing the statutes as conferring consent, such entities are likely to (as Defendants do here) contend they are not subject to personal jurisdiction in Delaware any longer. But converting to a foreign entity does not serve as an escape hatch to facilitate the avoidance of liabilities and obligations arising prior to conversion. *In re Coinmint, LLC*, 261 A.3d 867, 906 (Del. Ch. 2021) (noting that

"conversion does not 'affect any obligations or liabilities of the limited liability company incurred prior to such conversion or the personal liability of any person incurred prior to such conversion'") (citation omitted).  To divest the Delaware Courts of the ability to remediate such conduct would undercut the statutory purpose of the provisions and denude them of any meaning.  *Id.* (finding that Section 18-111 gave the Court jurisdiction to construe the applicable LLC agreement "that governed while it was domiciled in Delaware" and seeing "no basis in the Act to conclude that conversion divested this Court of that jurisdiction").  It would also foster an atmosphere where entities can convert to a foreign entity safe in the knowledge that they can avoid subsequent scrutiny for their conduct taken in the very jurisdiction that imbued them with authority and legal capacity in the first instance.

Defendants' argument that "a finding that entities converting out of Delaware are still subject to personal jurisdiction in Delaware would be a significant expansion of Delaware's jurisdictional authority" is misguided and ignores important constraints on such authority embodied in the statutory text.  D.I. 48 at 6.  Section 18-216(e)(6) expressly states there is a consent to service "in any action, suit or proceeding for enforcement of any obligation of the limited liability company *arising while it was a limited liability company of the State of Delaware*[.]" (emphasis added).  Accordingly, by its own terms, the statute is limited to instances where the entity is being sued for conduct undertaken while it was a Delaware entity.  Viewed under that lens and consistent with the statutory language, the provisions are akin to consent to jurisdiction clauses contained in contracts.  That is, "a consent to jurisdiction clause operates only as a consent to jurisdiction with respect to the claims to which it applies."  *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1133 (Del. Ch. 2008) (footnote omitted).  Insofar as Defendants assert that the Statutory Provisions do not foreclose personal jurisdiction objections altogether – Plaintiff agrees.

5

Converted entities still retain the ability to oppose personal jurisdiction where the lawsuit at issue pertains to obligations or liabilities occurring post-conversion. However, Defendants never argue (nor could they) that the subject matter of this lawsuit arises from actions the entities took after converting to the Cayman Islands. It is hardly an expansion of Delaware's jurisdictional authority for it to exercise jurisdiction over entities with respect to obligations or liabilities *incurred while Delaware entities*. D.I. 46 at 14 ("[T]he court recommends that the Cayman Entities consented to personal jurisdiction in Delaware *for alleged liabilities arising prior to their conversion*.") (emphasis added).

### B. Personal Jurisdiction over the Individual Defendants is Proper Via 6 *Del. C.* § 18-109 and 10 *Del. C.* § 3114.

#### 1. Statutory Bases

With respect to the LLC consent statute, Section 18-109, Defendants take issue with the Report's conclusion that the Individual Defendants are managers and therefore subject to personal jurisdiction in connection with this lawsuit. Defendants contend that the Complaint "contains *no* factual allegations supporting" the conclusion that the Individual Defendants were managers. D.I. 48 at 7. However, the Report found that argument waived because Defendants failed to include it in their briefing other than a cursory reference contained in a footnote. D.I. 46 at 17 ("[T]he Individual Defendants failed to argue that each of them do not meet the definition of 'manager' under the statute. … As such, the argument raised in a footnote is not properly before the Court and is, therefore, waived."). Defendants gloss over the finding of waiver and proceed to argue that there are insufficient factual allegations to support a finding that any of the Individual Defendants are managers. The Report's conclusion that the Individual Defendants waived their argument under Section 18-109 provides a sufficient basis, standing alone, to reject this objection.

6

Notwithstanding Defendants' waiver, the Report identified numerous allegations in Plaintiff's Complaint that were described as "plausible examples of how [the Individual Defendants] acted as managers of Capital Partners-LLC DE." D.I. 46 at 17.  Those allegations surround "how the Individual Defendants used their management authority to oust Plaintiff and preclude him from participating in management decisions with the CB Entities." *Id.*  The Report is supported by well-pled allegations that the Individual Defendants acted as "managers" within the meaning of Section 18-109.  Therefore, the Individual Defendants are susceptible to being sued in Delaware, subject to a due process analysis.

With respect to the corporate director and officer consent statute, Section 3114, Defendants argue that the Report erred in applying this statute to the Individual Defendants because the statute "clearly applies only to a corporate entity's directors, not its managers." D.I. 48 at 8.  Defendants argue this point is dispositive because "Individual Defendants are not even alleged in conclusory fashion to be directors." *Id.*  But that is wrong as Plaintiff expressly alleges that each of the Individual Defendants are directors of Management Corp.-DE, the predecessor entity of Management LLC-DE.  D.I. 1-1 at ¶¶ 24, 28, 40, 43.  Furthermore, Plaintiff explicitly alleged facts supporting a reasonable inference that the Individual Defendants used their positions as directors of Management Corp. to implement a scheme that purported to retroactively implement a stock vesting schedule in order to divest Plaintiff of his ownership interest in Management Corp.  D.I. 1-1 at ¶ 124-29.  The foregoing allegations suffice to establish that the Individual Defendants both served as directors of a Delaware corporation and engaged in fiduciary misconduct designed to harm the interests of a stockholder in order to enrich themselves.  Thus, Defendants' conclusory assertion that application of Section 3114 is precluded by a lack of substantiating allegations is belied by the well-pled allegations of the Complaint.

7

### 2. Due Process

With respect to the due process component of the analysis, the Report correctly concluded that the exercise of personal jurisdiction here over the Individual Defendants, whether under Section 18-109 or 3114, is consistent with due process. The Report noted that the Individual Defendants engaged in a pattern of behavior focused on Delaware that sought to "benefit themselves in effectuating a change of ownership, control, and financial stake in the CB Entities" and also convert Delaware entities "to an offshore domicile in the Cayman Islands in furtherance of their plan to wrongfully take for themselves Plaintiff's ownership, equity, and financial interests in the CB Entities." D.I. 46 at 21-22. Based on these allegations, the Report concluded that personal jurisdiction was appropriate because it was, or should have been, reasonably foreseeable to the Individual Defendants that they could be haled into a Delaware Court to answer for their conduct which was inextricably bound up in Delaware law and associated with the internal affairs of Delaware entities. *Id.* at 22.

Defendants attack the Report's finding that personal jurisdiction over the Individual Defendants is proper by assailing the entire Report and asserting the Report "failed to address any of [the appropriate] inquiries" under prevailing due process jurisprudence. D.I. 48 at 9. Their assertion is wrong.

**First**, the Individual Defendants purposefully directed their actions at Delaware. The Report found as much by observing that the Individual Defendants used Delaware law as their "language of commerce" and engaged in Delaware-focused conduct by using their positions of power to appropriate Plaintiff's interests in these entities to themselves. D.I. 46 at 21-22. The Report found that the Individual Defendants used their positions as managers and directors of Delaware entities to harm Plaintiff's financial interests. *Id.* Such conduct constitutes a textbook

8

breach of fiduciary duty, a claim routinely litigated in Delaware and which the State of Delaware has a special interest in overseeing – an interest which is germane to the due process analysis. *See, e.g.*, *McMillan v. Nelson*, 2024 WL 3311812, at *6 (Del. Ch. July 5, 2024) ("Another factor relevant to the minimum-contacts analysis is 'the forum State's interest in adjudicating the dispute.' That is satisfied here. 'Delaware has a strong interest in providing a forum for disputes relating to the ability of managers of an LLC formed under its law to properly discharge their respective managerial functions.'") (footnote omitted); *Maric Healthcare, LLC v. Guerrero*, 2024 WL 2993336, at *3 (Del. Ch. June 14, 2024) ("When considering the due process hurdle, this Court has recognized that '[a] chartering state has a strong interest in resolving disputes involving the internal affairs of the entities that it creates.'") (citation omitted).

**Second**, the litigation arises out of and relates to Defendants' activities. Again, contrary to the statements set forth in the Objections, the Report addresses the Individual Defendants' alleged conduct and its relation to Delaware given the allegations surround fiduciary misconduct. D.I. 46 at 20-22. Cases hold that "[d]ue process is satisfied as long as (i) the allegations against the defendant-manager focus centrally on the defendant's rights, duties and obligations as a manager of a Delaware LLC, and (ii) the resolution of the matter will be inextricably bound up in Delaware law." *McMillan*, 2024 WL 3311812, at *6; *see also In re P3 Health Grp. Holdings, LLC*, 282 A.3d 1054, 1072 (Del. Ch. 2022) ("[W]hen the action relates to a violation by the manager of a fiduciary duty owed to the LLC and its members, then the exercise of jurisdiction under Section 18-109 complies with due process"). Such is the case here as this action is about the disloyal conduct of fiduciaries at the helm of Delaware entities and the subsequent attempt to avoid responsibility by relocating assets and entities to a foreign jurisdiction.

9

**Finally**, the Report concluded that exercising personal jurisdiction over the Individual Defendants comports with traditional notions of fair play and substantial justice because the Individual Defendants should have foreseen having to defend their actions in a Delaware Court. D.I. 46 at 22; *see also Guerrero*, 2024 WL 2993336, at *3 (observing that an individual "who chooses to become involved in the business and affairs of a Delaware entity must expect to be subject to suit in the courts of the chartering state for actions taken on the entity's behalf") (citation omitted); *PT China LLC v. PT Korea LLC*, 2010 WL 761145, at *8 n.44 (Del. Ch. Feb. 26, 2010) ("By accepting a key management position over two Delaware limited liability companies, [the defendant] submitted himself to the jurisdiction of the Delaware courts in suits pertaining to his rights, duties, and obligations as a manager"); *Am. Institutional Partners, LLC v. Fairstar Res. LTD.*, 2011 WL 1230074, at *9 (D. Del. Mar. 31, 2011) (finding due process satisfied because the party "cannot be surprised it has been haled into a Delaware court for a dispute over the governance of these Delaware LLCs."). Because the conduct challenged in this action surrounds a scheme by directors or managers of Delaware entities to misappropriate assets belonging to Plaintiff, personal jurisdiction in Delaware is proper and comports with due process. *GSM Nation*, 2018 WL 2272708, at *11 (holding the exercise of personal jurisdiction was consistent with due process where fraudulently transferring money was a part of a scheme to defraud and which "[i]f proven, … would be in contradiction to [the defendant's] obligations as a manager of a Delaware limited liability company and traditional notions of justice and fair play require the Court to hold [the defendant] accountable for misusing his position") (footnote omitted).

### V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that the Report should be adopted and the Objections overruled.

Dated: August 19, 2024

*Of counsel:*

Daniel F. Markham
Michael Levin
WROBEL MARKHAM LLP
1407 Broadway, Suite 4002
New York, New York 10018
(212) 421-8100

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Jason Z. Miller*
Jason Z. Miller (No. 6310)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
jzm@skjlaw.com
dat@skjlaw.com

*Attorneys for Plaintiff
Benjamin Bin Chow*