## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BENJAMIN BIN CHOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CANYON BRIDGE CAPITAL PARTNERS, | ) | |
| LLC, a Cayman Islands Limited Liability | ) | |
| Company, CANYON BRIDGE CAPITAL | ) | C.A. No. 22-00947-JLH-SRF |
| MANAGEMENT, LLC, a Delaware Limited | ) | |
| Liability Company, CANYON BRIDGE | ) | |
| FUND I, LP, a Cayman Islands Limited | ) | |
| Partnership, HONG JOHN KAO, HEBER | ) | |
| RAYMOND BINGHAM, and PETER CHIN | ) | |
| KUO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT CANYON BRIDGE
CAPITAL PARTNERS, LLC, CANYON BRIDGE FUND I, LP, HONG JOHN KAO,
HEBER RAYMOND BINGHAM, AND PETER CHIN KUO'S MOTION
<u>FOR JUDGMENT ON THE PLEADINGS</u>**

*Of counsel:*

Daniel F. Markham
Michael Levin
WROBEL MARKHAM LLP
1407 Broadway, Suite 4002
New York, New York 10018
(212) 421-8100

SMITH, KATZENSTEIN & JENKINS LLP

Jason Z. Miller (No. 6310)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
jzm@skjlaw.com
dat@skjlaw.com

*Attorneys for Plaintiff
Benjamin Bin Chow*

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ........................................................................1

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT ............................................................................................................................6

I.     Defendants Have Failed to Establish That They Are Entitled to Judgment
       on the Pleadings ...........................................................................................................6

II.    Defendants' Denial That Defendant Kao Represented to Plaintiff That He
       Acted as Plaintiff's Attorney Creates a Material Issue of Fact That Must Be

       Decided by Trial and Precludes Judgment on the Pleadings ......................................8

III.   Defendants' Rule 9(b) Arguments Fail Because Plaintiff Has Sufficiently
       Pled with Particularity, and Particularity Requirements Are Relaxed When

       Facts Are Peculiarly Within Defendants' Control ....................................................12

IV.    Chow Is Entitled to Discovery ..................................................................................13

V.     Defendants' Statute of Limitations Argument Fails Under Both the Law
       and the Facts ..............................................................................................................14

VI.    Plaintiff's Deceit and Constructive Fraud Claims Are Not Duplicative of
       Breach of Fiduciary Duty ..........................................................................................15

VII.   Defendants Misstate the Pleading Standard for Aiding and Abetting a Breach
       of Fiduciary Duty Under California and Delaware Law ............................................16

VIII.  Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair
       Dealing Is Not Duplicative .......................................................................................16

IX.    Defendants Cite No California Authority Supporting Their Argument on
       Fraudulent Transfer Claims ......................................................................................17

X.     Defendants Concede That Directors Owe Fiduciary Duties to Stockholders
       Under Delaware Law .................................................................................................17

CONCLUSION .......................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................11, 12

*Beaulieu Grp., LLC v Bates,*
    2015 WL 13950821 (C.D. Cal. Dec. 3, 2015) ...............................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...........................................................................................11

*Braithwaite v. Rubin,*
    2014 WL 12930653 (D. Del. 2014) .....................................................................7

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) ..............................................................................7

*Careau & Co. v. Security Pacific Business Credit, Inc.,*
    222 Cal. App. 3d 1371, 1394 (1990) .................................................................17

*Celador Int'l Ltd. v. Walt Disney Co.,*
    347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) ................................................ 16-17

*Cerebrum Sensor Technologies, Inc. v. Revvo Technologies, Inc.,*
    2025 WL 72110 (D. Del. Jan. 10, 2025) .....................................................11, 12

*Christidis v. First Pennsylvania Mortgage Trust,*
    717 F.2d 96 (3d Cir. 1983) ................................................................................12

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F.2d 1242 (2d Cir. 1987) ............................................................................13

*eBay Domestic Hldgs., Inc. v. Newmark,*
    16 A.3d 1 (Del. Ch. 2010) .................................................................................18

*Fink v. Montes,*
    44 F. Supp. 2d 1052 (C.D. Cal. 1999) ................................................................8

*Fox v. Pollack,*
    181 Cal. App. 3d 954 (1986) ...............................................................................8

*Klaassen v. Allegro Dev. Corp.,*
    2013 WL 5967028 (Del. Ch. Nov. 7, 2013) .....................................................18

*Letke v. Jennings,*
  2024 WL 2390863 (D. Del. May 23, 2024) ..............................................................1, 6, 7

*In re Liquid Holdings Grp., Inc.,*
  2018 WL 2759301 (Bankr. D. Del. June 6, 2018) ..........................................................16

*Maio v. Aetna, Inc.,*
  221 F.3d 472 (3d Cir. 2000) ............................................................................................6

*Michaels Building Co. v. Ameritrust Co,*
  848 F.2d 674, 680 (6th Cir. 1988) .................................................................................13

*Moore v. Kayport Package Express, Inc.,*
  885 F.2d 531 (9th Cir. 1989) .........................................................................................13

*Namer v. Bank of America,*
  2017 WL 1180193 (S.D. Cal. 2017) ..............................................................................16

*P.A. v. Majestic Blue Fisheries, LLC,*
  812 F.3d 294, 307 (3d Cir. 2016)...................................................................................12

*Prakashpalan v. Engstrom,*
  223 Cal. App. 4th 1105 (2014) ......................................................................................14

*Responsible Citizens v. Superior Court,*
  16 Cal.App.4th (1993) ....................................................................................................8

*Rosenau v. Unifund Corp.,*
  539 F.3d 218 (3d Cir. 2008) ......................................................................................1, 6, 7

*Saporito v. Combustion Eng'g Inc.,*
  843 F.2d 666 (3d Cir. 1988), *vacated on other grounds,* 489 U.S. 1049 (1989) ..............13

*Shamrock Holdings v. Arenson,*
  456 F. Supp. 2d 599 (D. Del. 2006) ...............................................................................16

*Turbe v. Gov't of Virgin Islands,*
  938 F.2d 427 (3d Cir. 1991) ........................................................................................6, 7

*United States v. Bauer,*
  132 F.3d 50 (9th Circ.1997) ...........................................................................................9

*Unocal Corp. v. Mesa Petroleum Co.,*
  493 A.2d 946 (Del. 1985) ..............................................................................................18

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
    812 F.3d 294 (3d Cir. 2016) ............................................................................12

*In re Verisign, Inc. Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) .........................................................15

*Wilson v. USI Ins. Services LLC*,
    57 F.4th 131 (3d Cir. 2023) ............................................................................7

**Statutes and Rules**

Cal. Civ. Proc. Code § 340.6(a) ............................................................................14

California's Uniform Fraudulent Transfer Act .......................................................17

Fed. R. Civ. P. 9(b) ...........................................................................................12, 13

Fed. R. Civ. P. 12(b)(6).............................................................................................6

Fed. R. Civ. P. 12(c) .........................................................................................1, 6, 7

**Treatises**

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.)................................1

## <u>NATURE AND STAGE OF PROCEEDINGS</u>

The nub of Defendants Canyon Bridge Capital Partners, LLC, Canyon Bridge Fund I, LP, Hong John Kao ("Kao"), Heber Raymond Bingham ("Bingham"), and Peter Chin Kuo's ("Kuo") (collectively, "Defendants") motion for judgment on the pleadings is their implicit argument that there are no material triable issues fact raised by the Verified First Amended Complaint (the "Amended Complaint" or "FAC") (D.I. 1-1) and Defendants' Answer (D.I. 71). Tellingly, nowhere in their moving brief do Defendants inform the Court that a Rule 12(c) motion must not be granted "unless the movant clearly establishe[s] that no material issue of fact remains to be resolved…" and that it is "entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008); *Letke v. Jennings,* C.A. No. 23-1230-GBW, 2024 WL 2390863, at *2 (D. Del. May 23, 2024).

The absence of a triable issue of fact is the *sine qua non* that the moving Defendants must establish in order to prevail on their motion.  As Wright & Miller states, "[a] motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.)

Here, Defendants have utterly failed to carry their burden of establishing that the pleadings do not raise material triable issues of fact. Even the most cursory glance at the pleadings makes it crystal clear that Defendants contest virtually all the material factual allegations in the Amended Complaint.  For the Court's convenience, attached hereto as Exhibit A is a chart containing the major factual allegations of the Amended Complaint that Defendants' have denied. Indeed, Defendants' own Answer requires that Defendants' instant motion must be denied.

1

## STATEMENT OF FACTS

In 2016, Chow undertook the establishment of a new private equity fund focusing on global technology investments. In order to assist him in the venture with regard to providing legal work and advice, Chow retained Kao, a supposed friend of many years who was then a senior partner at the Beijing office of Jones Day. FAC, ¶ 53.  Thereafter, in late Spring and early Summer 2016, Chow and Kao, who represented to Chow that he was Chow's lawyer, engaged in exploring investments for the to-be-formed fund. *Id*., ¶ 54.

In October 2016, Chow, Kao, Bingham, and Kuo met in Jones Day's office in San Francisco, CA, to discuss the Fund. Chow asked Kao, Bingham, and Kuo to join the Canyon Bridge Entities (defined *infra*). *Id*., ¶ 67.  Thereafter, Chow agreed to and later transferred 20% of his ownership interests in Canyon Bridge Capital Partners, LLC, a Delaware limited liability company ("Capital Partners-Delaware") and Canyon Bridge Capital Management Corp. to each of Kao, Bingham, and Kuo. *Id*., ¶ 68.

In or about early to mid-November 2016, while he was a partner at Jones Day, Kao learned that Jones Day had received an inquiry from the Financial Industry Regulatory Authority ("FINRA"). *Id*., ¶ 63.  Kao continued to represent to Chow that he was Chow's attorney and Kao never advised Chow to seek separate counsel. *Id*., ¶ 65.

On December 23, 2016, Chow, Kao, and Bingham, as Members, entered into the Limited Liability Company Agreement of Capital Partners - Delaware, the General Partner of Canyon Bridge Fund I, LP ("Fund-Delaware" and with Capital Partners-Delaware and Management Corp., the "Canyon Bridge Entities") (the "Operating Agreement")[1], which Kao drafted. *Id*., ¶ 69.  The Operating Agreement reflects that the capital contributions to the Company by the Members were

---

[1] A copy of the Operating Agreement was attached as Exhibit 2 to the Defendants' Opening Brief. ("OB").

as follows: (a) Chow – $9,090,909.09; (b) Bingham – $3,030,303.03; and (c) Kao – $3,030,303.03. *Id.*, ¶ 70.  The Operating Agreement also included provisions, including Section 6.5(c) and the definition of "Cause," purporting to cause the forfeiture of a Member's capital contribution to, and for the benefit of, the other Members and expulsion of a Member from the company for "any activity pertaining to" the "Investment Manager," Capital Partners-Delaware, a Member thereof, or Fund-Delaware "that constitutes fraud or a felony (as determined by a court of competent jurisdiction in a final, non-appealable judgment or in a final non-appealable arbitration)." *Id.*, ¶ 71, OB, Ex. 2 § 1.1.

Kao and Jones Day also put into the Operating Agreement a highly unusual provision, Section 6.5(a), that provided that if a Member of Capital Partners-Delaware ceased to be a consultant or employee of Management Corp. before October 23, 2019, that Member would automatically forfeit his equity in Capital Partners-Delaware. FAC, ¶ 72, OB, Ex. 2 § 6.5(a).  At the time that Kao drafted the Operating Agreement, including Sections 6.5(a), 6.5(c), and the definition of "Cause" (Section 1.1), Kao knew that his client, Chow, was potentially the subject of a FINRA investigation. FAC, ¶ 73.  Further, Kao knew that, under Section 6.5(c) and the definition of "Cause" as written in the Operating Agreement, which he and Jones Day had prepared, if Chow were expelled as a Member of Capital Partners-Delaware and forfeited his capital, Kao, Bingham, and Kuo would be enriched by the resulting increase in their respective capital accounts. FAC, ¶ 74, ¶ 75.

In early January 2017, less than a month after the signing of the Operating Agreement, Chow learned that Michael Yin had been stopped by the FBI and that the FBI agents had seized his telephone. Chow immediately told Kao of the incident, and Kao insisted that Chow consult one of the criminal defense partners at Jones Day. *Id.*, ¶ 80.  Significantly, Kao did not advise Chow

to retain another attorney and, in particular, did not advise Chow to retain a criminal defense attorney who was not connected with Jones Day. *Id.*, ¶ 81.

In February 2017, Kao and another Jones Day Partner, Steven Hibbard, advised Chow to retain as criminal defense counsel, Brian Sun, a partner in Jones Day's Los Angeles office. *Id.*, ¶ 82. On or about May 1, 2017, Kao advised Chow that Sun and Jones Day could not represent him, but he did not advise Chow that he should retain other counsel instead of Kao with regard to Chow's dealings with other matters, including matters involving Fund-Delaware. *Id.*, ¶ 83.

On or around April 28, 2018, immediately after Chow's trial and before Chow had taken his appeal, Kao, Bingham, and Kuo met with Chow and a representative of China Venture Capital Co., Ltd. ("China Venture"), the owner of Yitai, the limited partner of Fund-Delaware, at Canyon Bridge's Menlo Park, California office. At that meeting, Kao, who continued to represent to Chow that he was Chow's attorney, with the acquiescence of Bingham and Kuo, proposed that Chow's membership interests in Capital Partners be reduced from 40% to 25% and that Chow's annual salary be reduced by half. Chow did not agree. *Id.*, ¶ 119.

In August 2018, before Chow had taken his appeal, Kao asked the Canyon Bridge Entities' lawyers, Jones Day, to draft redemption agreements for the redemption of Common Stock in the Management Corp. and Class A Units in Capital Partners-Delaware, which anticipated Chow's post-redemption ownership interest to be 25%. Chow was still a director, member, or stockholder in the Canyon Bridge Entities and was clearly the focus of these draft agreements, yet Kao did not share these drafts with Chow. Kao was still representing to Chow that he was Chow's attorney. *Id.*, ¶ 121.

In August and September 2018, while he was in Beijing and before Chow had taken his appeal, Kao made numerous visits to China Venture, Yitai's owner, and convinced China Venture to join in his efforts to expel Chow from the Canyon Bridge Entities. *Id.*, ¶ 122.

On or about October 8, 2018, before Chow had taken his appeal, Kao, Bingham, and Kuo signed a Written Consent of the Stockholders of Management Corp., purportedly implementing a recommendation of the board of directors of Management Corp. to impose a stock vesting schedule pursuant to which 50% of the issued stock would vest on the third anniversary following September 14, 2016, and an additional 10% would vest each subsequent anniversary, provided that if the stockholder "cease[d] to be an employee of, or consultant to, the Company on or prior to the full vesting of Common Stock hereunder for any reason," the non-vested stock would be forfeited. *Id.*, ¶ 124.

At the time that Kao, Bingham, and Kuo signed the Written Consent of the Stockholders of the Management Corp., they were Directors of the Management Corp. and owed a fiduciary duty to Chow. *Id.*, ¶ 125. Despite the fact that, when the stock of Management Corp. was issued, there was no vesting schedule imposed on such stock, and Chow never agreed to a subsequent vesting schedule, Kao, Bingham, and Kuo, as directors, treated the vesting schedule as effective and stripped Chow of his vested stock in Management Corp. The purported action of the directors and stockholders of Management Corp. was ineffective, invalid, and void. *Id.*, ¶ 127.

After the verdict in April 2018, Kao, Bingham, and Kuo knew they could not stop the vesting of Capital Partners-Delaware's units, particularly because a final, non-appealable order had not been entered in the criminal proceedings. Therefore, in October 2018, they took action at Management Corp. to terminate Chow so as to improperly deprive him of his equity ownership in Capital Partners-Delaware, thus acting in bad faith. *Id.*, ¶ 128.

On May 16, 2019, after they purportedly had ousted Chow from the Canyon Bridge Entities, Kao, Bingham, and Kuo attempted to shield Capital Partners-Delaware from Chow's reach by filing with the Delaware Secretary of State a Certificate of Conversion from a Delaware Limited Liability Company to a Non-Delaware Entity pursuant to Section 18-216 of the Delaware Limited Liability Company Act, attempting to move the domicile of the Limited Liability Company from Delaware to the Cayman Islands. *Id.*, ¶ 132.

On May 28, 2019, after they had purportedly ousted Chow from the Canyon Bridge Entities, Kao, Bingham, and Kuo attempted to shield Fund-Delaware from Chow's reach by filing with the Delaware Secretary of State a Certificate of Conversion from a Delaware Limited Partnership to a Non-Delaware Entity pursuant to Section 17-219 of the Delaware Limited Partnership Act, attempting to move the domicile of Fund-Delaware from Delaware to the Cayman Islands. *Id.*, ¶ 133.

## **ARGUMENT**

### I.    **Defendants Have Failed to Establish That They Are Entitled to Judgment on the Pleadings.**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as to not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion where, as here, defendant alleges that plaintiff has failed to state a claim upon which relief may be granted. *Letke v.*, 2024 WL 2390863, at *2 (citing *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).

Accordingly, "[w]hen evaluating a defendant's motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true, viewing them in the light most

favorable to the nonmoving party." *Letke*, 2024 WL 2390863, at *2; *Rosenau*, 539 F.3d 218 at; *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

Additionally, the Court must draw all favorable inferences in favor of the non-moving party. *Wilson v. USI Ins. Servs. LLC*, 57 F.4th 131, 140 (3d Cir. 2023).

The Court may not grant a Rule 12(c) motion "unless the movant clearly establishe[s] that no material issue of fact remains to be resolved" and that it is "entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221; *Letke*, 2024 WL 2390863, at *2.

In short, a Rule 12(c) motion can be granted only if no relief could be afforded under any set of facts that could be proved. *Turbe*, 938 F.2d at 428; *see also Braithwaite v. Infinity Publ'g, Inc.*, C.A. No. 11-140-GMS, 2014 WL 12930653, at *1 n.6. (D. Del. Sept. 17, 2014).

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Letke*, 2024 WL 2390863, at * 2; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that documents integral to pleadings may be considered on Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington,* 114 F.3d at 1420.

Accordingly, a court may grant a motion for judgment on the pleadings only if, after accepting all factual allegations as true and making all reasonable inferences in plaintiff's favor, plaintiff is not entitled to relief.

## II.    Defendants' Denial That Defendant Kao Represented to Plaintiff That He Acted as Plaintiff's Attorney Creates a Material Issue of Fact That Must Be Decided by Trial and Precludes Judgment on the Pleadings.

One of the key material triable issues of fact that precludes judgment on the pleadings is whether Defendant John Kao, an attorney for Canyon Bridge Capital Management, LLC and Defendants Canyon Bridge Capital Partners, LLC and Canyon Bridge Fund I, LP, represented to Plaintiff Chow that he was also Chow's attorney, that Plaintiff Chow changed his position to his detriment in reliance on Kao's representations, that Kao is thus estopped to deny that he made himself a fiduciary of Chow, and that Kao thus violated his fiduciary duty to Plaintiff by engineering Plaintiff's ouster from the Canyon Bridge entities and the theft of his equity in those entities, approximately in excess of $ 5 million.

Defendants cite *Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007), for the proposition that a party's subjective belief that an attorney-client relationship existed is "legally irrelevant." (OB at pp. 2, 10). That is an inaccurate characterization of the case. In actuality, the *Zenith* court held that a subjective belief *alone* is insufficient to establish an attorney-client relationship. The court emphasized that it is the intent and conduct of the parties that controls the question of whether an attorney-client relationship was created.

Next, in citing *Fink v. Montes,* 44 F. Supp.2d 1052, 1060 (C.D. Cal. 1999) (OB at pp. 3, 9), Defendants omit well-settled California law which recognizes that courts look to the totality of the circumstances in determining whether an attorney-client relationship was formed.

> n determining whether an attorney-client relationship is created on the basis of an implied contract, the court examines the totality of the circumstances. . Some of the factors to consider are: (1) the nature and extent of the contacts between the attorney and the purported client, ; (2) whether the purported client divulged confidential information to the attorney, (3) whether the attorney provided the purported client with legal advice; ; and (4) whether the purported client sought or paid for the attorney's services.

*Fink,* 44 F. Supp.2d at 1060 (internal citations omitted).

8

The Amended Complaint is replete with allegations that Defendant Kao repeatedly represented to Chow that Kao was his lawyer and thus owed a fiduciary duty to Chow. (FAC, ¶¶ 2, 6, 31, 32, 54, 65, 75, 85, 87, 96, 103, 112,119, 121, 135, and 145). Defendants denied all those allegations. Exhibit A is attached hereto.

Moreover, Chow and Kao were supposed friends for many years and thus Chow had a good faith basis to believe Kao's representations and reasonably relied upon them. *Id*., ¶ 53. Also, Kao and Chow considered and discussed, as a potential investment for the Fund, Lattice Semiconductor Corporation ("Lattice"). Kao, in or about early to mid-November 2016, while he was a partner at Jones Day, learned that Jones Day had received an inquiry from FINRA. Jones Day advised Kao of the inquiry and that FINRA instituted an investigation into possible securities trading violations of the Securities Exchange Act of 1934 in connection with public company buyout deals. Jones Day also advised Kao that the FINRA investigation involved the non-public information that the stock of Lattice was being acquired by Capital Partners-Delaware. Kao learned that Jones Day also told FINRA that Chow was the founder of Capital Partners-Delaware. *Id*., ¶¶ 54, 62-64.

Not only did Kao continue to represent to Chow that he was Chow's attorney, Kao did not advise Chow to seek separate counsel. *Id*., ¶ 65.

Moreover, on or about October 18, 2016, Capital Partners – Delaware, as General Partner, Yitai Capital Limited, as Limited Partner, Chow, as General Partner of Capital Partners – Delaware and as "Initial Limited Partner" entered into an Amended and Restated Partnership Agreement of Canyon Bridge Fund I, LP (the "Fund LP Agreement"). *Id*., ¶¶ 57 and 59; OB, Ex. 1. The Fund LP Agreement contains the standard disclosure provision that "Each Limited Partner hereby acknowledges and agrees that Jones Day … is acting as counsel to the General Partner and as such

9

does not represent or owe any duty to such Limited Partner or to the Limited Partners as a group in connection with such retention." OB, Ex. 1, § 15.12.

On December 23, 2016, Chow, Kao, and Bingham, as Members, entered into the Limited Liability Company Agreement of Capital Partners – Delaware, the General Partner of Fund-Delaware (the "Operating Agreement"). OB, Ex. 2. The preamble to the Operating Agreement provides that even though it was executed on December 23, 2016, it was "desired [to be] effective as of October 18, 2016…."[2] Chow is unaware of any Limited Liability Company Operating Agreement for Capital Partners-Delaware that existed prior to December 23, 2016. Thus, the Operating Agreement was not in existence at the time of the November 3, 2016, public announcement of Fund-Delaware's acquisition of Lattice or at the time of the November 2016 FINRA telephone call to Jones Day and subsequent call with Kao regarding the potential acquisition of Lattice. FAC ¶ 69; OB, Ex. 2.

Notably, the Operating Agreement does not contain a provision whereby Jones Day discloses to the signatories who it is representing. Either Kao (through Jones Day) was representing Chow or Kao wanted Chow to continue to believe that he was his lawyer. The omission of this standard provision needs to be explored through discovery.

The cases Defendants cite in urging that Chow has no claim are inapposite—those cases do not involve an attorney defendant like Kao expressly representing to a non-attorney plaintiff like Chow that he was plaintiff's lawyer.

Indeed, Defendants' own case, *Colby v. Newman*, 2012 WL 12887688 (C.D. Cal. Oct. 5, 2012) demonstrates that Defendants' motion is misplaced and that a trial is required in this action: "the question of whether [an attorney-client] relationship exists is a question of law, but *when*

---

[2]     Defendant Kuo formally became a Member in April 2017, at which time Chow transferred 20% of his ownership in Capital Partners-Delaware and Management Corp. to Kuo.

*evidence is conflicting, the fact basis for the determination must be determined [i.e.by the jury at*

*trial] before the legal question is addressed.*) 2012 WL 12887688 at *3 (internal quotation marks

and citation omitted) (emphasis added).

Finally, Defendants argue that the Amended Complaint fails to meet the plausibility

requirement of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556

U.S. 662, 663 (2009). Defendants' argument is pure *ipse dixit.* Defendants make no effort to

explain to the Court *why* the Amended Complaint is "implausible."

In fact, the Amended Complaint does meet the requirements of *Iqbal* and *Twombly.*

*Cerebrum Sensor Technologies, Inc. v. Revvo Technologies, Inc.*, C.A. No. 24-245-JLH-SRF,

2025 WL 72110 (D. Del. Jan. 10, 2025). As this Court noted in *Cerebrum,*

> Although detailed factual allegations are not required, the complaint
> must set forth sufficient factual matter to 'state a claim to relief that
> is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
> 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In
> assessing the plausibility of a claim, the court must 'accept all
> factual allegations as true, construe the complaint in the light most
> favorable to the plaintiff, and determine whether, under any
> reasonable reading of the complaint, the plaintiff may be entitled to
> relief.' [citation omitted]. A claim is facially plausible when the
> factual allegations allow the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged. *Iqbal*, 556
> U.S. at 663; *Twombly*, 550 U.S. at 555–56.

This Court continued,

> The court's determination is not whether the non-moving party 'will
> ultimately prevail,' but whether that party is 'entitled to offer
> evidence to support the claims.' [Citation omitted]. This 'does not
> impose a probability requirement at the pleading stage,' but instead
> 'simply calls for enough facts to raise a reasonable expectation that
> discovery will reveal evidence of [the necessary element].' The
> court's determination is not whether the non-moving party "will
> ultimately prevail," but whether that party is "entitled to offer
> evidence to support the claims.'[citation omitted]. This 'does not
> impose a probability requirement at the pleading stage,' but instead
> 'simply calls for enough facts to raise a reasonable expectation that

> discovery will reveal evidence of [the necessary element].'[citation omitted]. '[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.'

*Cerebrum,* 2025 WL 72110 at *1-*2.

Here, *Twombly*'s and *Iqbal's* requirements are met. Plaintiff's claims have, "facial plausibility …[because] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677.

### III.    Defendants' Rule 9(b) Arguments Fail Because Plaintiff Has Sufficiently Pled with Particularity, and Particularity Requirements Are Relaxed When Facts Are Peculiarly Within Defendants' Control.

Defendants further contend that Plaintiff's claims for deceit, constructive fraud, and fraudulent transfer should be dismissed for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9(b) (OB at pp. 13-14, 17-18). Plaintiff has provided substantial allegations detailing the "who, what, when, where, and how" of Defendants' misconduct, consistent with Rule 9(b). FAC ¶¶ 137, 144-146, 172, and 180. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Furthermore, Defendants' argument ignores established precedent holding that Rule 9(b)'s heightened pleading standard is "relaxed" when "factual information is peculiarly within the defendants' knowledge or control":

> Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." Christidis, 717 F.2d at 99–100. Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir.1987); C. Wright & A. Miller, § 1298 at 416.

Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540

12

(9th Cir.1989); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir.1988); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir.1987); see *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 675 (3d Cir.1988) (pleadings do not satisfy Rule 9(b); no reason to believe that additional information is in the exclusive control of defendant), *vacated on other grounds,* 489 U.S. 1049 (1989).

Accordingly, Defendants' reliance on Rule 9(b) as a basis for dismissal is misplaced. Plaintiff has pled his claims with sufficient particularity given the information available to him, and Defendants cannot use Rule 9(b) as a shield to prevent legitimate claims from proceeding to discovery.

## IV.    Chow is Entitled to Discovery.

There exist myriad issues requiring discovery, including but not limited to the attorney-client relationship between Chow and Kao; Kao's role, as Chow's attorney, in Chow's termination and forfeiture of equity; Defendants' internal communications and decision-making regarding Chow's termination and equity in furtherance of Defendants' conspiracy; and Defendants' fraudulent transfer and corporate restructuring; the basis for Defendants' conversion of the Delaware entities into entities domiciled in the Cayman Islands.

## V.    Defendants' Statute of Limitations Argument Fails Under Both the Law and the Facts.

Defendants argue that Counts II and IV of the Complaint for Constructive Fraud and Breach of Fiduciary Duty against Kao are barred by California Code of Civil Procedure, Section 340.6(a), which has a one-year statute of limitations. *See* OB at pp. 11-12. Defendants are wrong on the law and the facts.

As an initial matter, Plaintiff disputes Defendants' claim that Cal Civ. Proc. Code § 340.6(a) governs his claims for constructive fraud and breach of fiduciary duty against Kao.

Contrary to Defendants' conclusory assertions, it is not clear, at this early stage in the litigation, that Plaintiff's claims "will necessarily depend on proof that an attorney violated a professional obligation". *Lee v. Hanley*, 61 Cal. 4th 1225, 1238 (2015) (holding that, "[f]or purposes of section 340.6(a), the question is not simply whether a claim alleges misconduct that entails the violation of a professional obligation. Rather, the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation.").

Moreover, even conceding (for purposes of this motion only) that Cal Civ. Proc. Code § 340.6(a) governs Counts II and IV, Plaintiff's claims fall within the one-year statute of limitations. In *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1121 (2014), the Court noted that the "statute is tolled only during the time the plaintiff has not sustained actual injury" and that the "actual injury occurs where the plaintiff suffers any loss or injury legally cognizable as damages based on the asserted errors or omissions of an attorney".

Here, Plaintiff suffered his "actual injury" when he was forced to forfeit his equity based on Section 6.5(c) of the Operating Agreement, which Kao drafted in his role as an attorney. Section 6.5(c) of the Operating Agreement provides for forfeiture of all Class A (vested and non-vested) if the Member is terminated by the Investment Manager for "Cause." Subsection (c) of "Cause" applies once a court determines in a "*final non-appealable judgment" that the activity was "fraud or a felony."* (emphasis added) (OB, Ex. 2, § 1.1)

The plain language of the Operating Agreement makes clear that Plaintiff's shares were forfeited when Chow's conviction became "final and non-appealable." Chow's conviction was affirmed by the Court of Appeals on April 6, 2021 and became final and non-appealable on July 5, 2021, after Chow's time to appeal that decision to the United States Supreme Court expired.

14

FAC, ¶ 86.  Since Chow's actual injury occurred on July 5, 2021, he filed his claims against Kao within one year when he commenced the Delaware Court of Chancery action on October 8, 2021.

## VI.    Plaintiff's Deceit and Constructive Fraud Claims Are Not Duplicative of Breach of Fiduciary Duty.

Defendants argue that Plaintiff's claims for deceit and constructive fraud should be dismissed as duplicative of the breach of fiduciary duty claim, citing cases that generally stand for the proposition that district courts have discretion to dismiss duplicative claims. (Defendants' Brief at 13). Again, Defendants' reliance on their cited case law is misplaced.

In particular, Defendants rely on *In re Verisign, Inc. Derivative Litig.*, which does not apply to the instant case. 531 F. Supp. 2d 1173 (N.D. Cal. 2007). (OB at p. 13) The *Verisign* court dismissed the constructive fraud claim because it was not pled with particularity, and noted (in dicta) that the claim was indistinguishable from plaintiff's claim for breach of fiduciary duty.  *Id.* at 1219. But the court did not establish a blanket rule requiring dismissal of constructive fraud claims whenever a fiduciary duty claim is asserted.

## VII.    Defendants Misstate the Pleading Standard for Aiding and Abetting a Breach of Fiduciary Duty Under California and Delaware Law.

Defendants improperly conflate the pleading requirements for aiding and abetting under California and Delaware law. (Defendants' Brief at 16).  Under California law, actual knowledge of the specific primary wrong is required to establish liability. *See Namer v. Bank of Am.*, C.A. no. 16c3024 JM (WVG), 2017 WL 1180193 (S.D. Cal. 2017). However, under Delaware law, actual knowledge is not required. *See In re Liquid Holdings Grp., Inc.*, No. 16-10202 (KG), 2018 WL 2759301, at *15 (Bankr. D. Del. June 6, 2018); *see also Shamrock Holdings v. Arenson*, 456 F. Supp. 2d 599, 610 (D. Del. 2006) ("[a] third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party knowingly participates in the

15

breach. To survive a motion to dismiss, the complaint must allege facts that satisfy the four elements of an aiding and abetting claim: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, ... (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach.") (internal quotation marks and citation omitted)). Chow has sufficiently pled that Bingham and Kuo aided and abetted Kao's breach of his fiduciary duty to Chow. FAC, ¶¶ 160-164.

## VIII. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Not Duplicative.

Defendants' argument that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative of the breach of contract is misguided and oversimplified. (Defendants' Brief at 16-17). *Beaulieu Grp., LLC v Bates*, EDCV 15-1090 JGB (KKx), 2015 WL 13950821 (C.D. Cal. Dec. 3, 2015), a case cited by Defendants, actually supports Chow's position.

First, "a breach of the implied covenant of good faith and fair dealing involves something more than the breach of a contractual duty." *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990)). The claim centers on "unfair dealing, whether or not it also constitutes breach of a consensual contract term, prompted by a conscious and deliberate act that 'unfairly frustrates the agreed common purposes [of the contract] and disappoints the reasonable expectations of the other party.'" *Id.* (quoting *Careau*, 222 Cal. App. 3d at 1395).

Chow's claims of breach of the implied covenant of good faith and fair dealing center on "unfair dealing" as Chow alleges that he relied, to his great detriment, on Kao's repeated representations that he was Chow's attorney.

## IX. Defendants Cite No California Authority Supporting Their Argument on Fraudulent Transfer Claims.

Defendants claim that Plaintiff's fraudulent transfer claims under California's Uniform Fraudulent Transfer Act and California common law fail due to a lack of specificity (Defendants' Brief at 17-18); however, Defendants fail to cite a single California case to support this assertion.

Nevertheless, discovery is necessary to uncover Defendants' internal financial records and communications regarding the alleged fraudulent transfers, which remain within their exclusive control.

### X.    Defendants Concede That Directors Owe Fiduciary Duties to Stockholders Under Delaware Law.

Defendants argue that Plaintiff's fiduciary duty claims fail because corporate directors do not owe duties to individual stockholders. (Defendants' Brief at 19-20).  However, the very case they cite, *Klaassen v. Allegro Dev. Corp.*, acknowledges that directors owe fiduciary duties to the corporation and its stockholders as a whole:

> First, corporate directors do not owe fiduciary duties to individual stockholders; they owe fiduciary duties to the entity and to the stockholders as a whole. See, e.g., *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 955 (Del.1985) ("[C]orporate directors have a fiduciary duty to act in the best interests of the corporation's stockholders."); *eBay Domestic Hldgs., Inc. v. Newmark*, 16 A.3d 1, 34 (Del. Ch.2010) (explaining that directors' fiduciary duties include "acting to promote the value of the corporation for the benefit of its stockholders").

C.A. No. 8626-VCL, 2013 WL 5967028, at *11 (Del. Ch. Nov. 7, 2013). Defendants' attempt to sidestep their fiduciary obligations is contrary to settled Delaware law and should be rejected.

## CONCLUSION

For the forgoing reasons, the Defendants' Motion for Judgment on the Pleadings must be denied.  Reduced to its essence, Defendants' motion is simply an attempt to avoid a trial in a case involving contested facts.

Dated:  January 16, 2025

SMITH, KATZENSTEIN & JENKINS LLP

*Of counsel:*

   */s/  Jason Z. Miller*

Daniel F. Markham                 Jason Z. Miller (No. 6310)
Michael Levin                     Daniel A. Taylor (No. 6934)
WROBEL MARKHAM LLP                1000 West Street, Suite 1501
1407 Broadway, Suite 4002         Wilmington, Delaware 19801
New York, New York 10018          (302) 652-8400
(212) 421-8100                    jzm@skjlaw.com
                                  dat@skjlaw.com

                                  *Attorneys for Plaintiff*
                                  *Benjamin Bin Chow*