# Exhibit A

# EXHIBIT A

# DISPUTED FACTS (ALLEGATIONS DENIED BY DEFENDANTS)

| ¶ | **Verified First Amended Complaint (D.I. 1-1) Allegations** |
|---|---|
| 1 | This is an action arising from Defendants' conspiracy to commit actual and constructive fraud, violations of fiduciary duties, unjust enrichment, breach of contract, and fraudulent transfers which have injured Chow and financially benefited Kao, Bingham, and Kuo. |
| 7 | As described in detail below, Kao, Bingham, and Kuo entered into a conspiracy to use Chow to establish Fund-Delaware, and after Chow had obtained investors and acquired assets for Fund-Delaware, they wrongfully deprived Chow of his financial and ownership interests in the Capital Bridge Entities and then fraudulently transferred Fund-Delaware and Capital Partners-Delaware and their assets to Cayman Islands entities so as to hinder, delay or defraud Chow, who was then also a creditor of the Canyon Bridge Entities. |
| 11 | But Chow's faith in Kao, Bingham, and Kuo would prove to be misplaced. Chow bestowed Kao, Bingham, and Kuo with management positions and ownership interests in the Canyon Bridge Entities, only to be later stabbed in the back by Kao, Bingham, and Kuo, under the leadership of Kao, when they orchestrated Chow's removal from the Canyon Bridge Entities and purported to cause the forfeiture of Chow's equity interests, to which they helped themselves. Throughout this period, Kao repeatedly told Chow that he was Chow's attorney and was acting in Chow's interests, and Chow relied on Kao's advice and believed him. |
| 32 | At all times relevant to the claims set forth in this action, Kao was advising Chow that he was Chow's attorney, and Chow relied on Kao's representations and believed that Kao was his attorney. At all times relevant to the claims in this action, Chow relied upon and followed Kao's advice believing Kao to be his attorney, and Chow acted on Kao's advice to his detriment. |
| 34 | At no time did Kao advise Chow that Kao had a conflict of interest in acting as attorney for the Canyon Bridge Entities and acting as attorney for Chow. |
| 35 | At no time did Kao advise Chow that Kao had a conflict of interest with Chow in engaging in business transactions with Chow because he was Chow's attorney. |
| 36 | At no time did Kao advise Chow that Chow should retain an attorney other than Kao to provide Chow with independent legal advice. |
| 37 | Kao is believed to now control the Fund-Cayman Islands and has displaced Bingham and Kuo from any influence in the operations of the Fund-Cayman Islands. |
| 39 | Kao is a resident of the State of New York. |
| 42 | Bingham is a resident of the State of California. |
| 45 | Kuo is a resident of the State of California. |
| 65 | Kao continued to represent to Chow that he was Chow's attorney. Kao did not advise Chow to seek separate counsel. |
| 73 | At the time that Kao drafted the Operating Agreement, including Sections 6.5(a), 6.5(c), and the definition of "Cause," Kao knew that his client, Chow, was then a person who was potentially a subject of a FINRA investigation. |

| 74 | Kao knew that under Section 6(c) and the definition of "Cause" as written in the Operating Agreement, which he and Jones Day had prepared, that if Chow were expelled as a Member of Capital Partners-Delaware and forfeited his capital, that Kao, Bingham, and Kuo would be enriched by the resulting increase in their respective capital accounts. |
|---|---|
| 81 | Kao did not advise Chow to retain another attorney and, in particular, Kao did not advise Chow to retain a criminal defense attorney who was not connected with Jones Day. |
| 94 | At the time that Kao drafted the Operating Agreement, including Sections 6.5(a), 6.5(c), and the definition of "Cause," Kao knew that his client, Chow, was then a person who was potentially a subject of a FINRA investigation. |
| 95 | Kao knew that under Section 6.5(c) and the definition of "Cause" as written in the Operating Agreement, which he and Jones Day had prepared, that if Chow were expelled as a Member of Capital Partners-Delaware and forfeited his capital that Kao, Bingham, and Kuo would be enriched by the resulting increase in their respective capital accounts. |
| 96 | The Operating Agreement was drafted by Kao and Jones Day while Kao repeatedly represented to Chow that Kao was Chow's attorney. Chow relied on those representations, and Kao knew that Chow relied on those representations. |
| 97 | By entering into the Operating Agreement with Chow, Kao, as Chow's attorney, entered into a business activity with his client in violation of professional ethics and created an additional conflict of interest. |
| 98 | At no time did Kao advise Chow that professional ethics prohibited him from engaging in a business relationship with Chow without the requisite disclosures (which Kao never provided) and that Kao had created another conflict of interest by doing so. |
| 99 | Kao never advised Chow that Chow should seek independent legal advice in connection with any of the matters set forth above. |
| 102 | As described above (¶¶ 80-86), Kao did not advise Chow to retain another attorney and, in particular, Kao did not advise Chow to retain a criminal defense attorney who was not connected with Jones Day. Chow later retained criminal defense counsel and his conviction was later affirmed. Kao did not advise Chow that he should retain other counsel instead of Kao with regard to Chow's dealings with other matters, including matters involving Fund-Delaware. |
| 110 | At the time that Kao drafted the Operating Agreement, including Sections 6.5(a), 6.5(c) and the definition of "Cause," Kao knew that his client, Chow, was then a person who was potentially a subject of a FINRA investigation. |
| 111 | Kao knew that under Section 6(c) and the definition of "Cause" as written in the Operating Agreement, which he and Jones Day had prepared, that if Chow were expelled as a Member of Capital Partners-Delaware and forfeited his capital that Kao, Bingham, and Kuo would be enriched by the resulting increase in their respective capital accounts. |
| 112 | The Operating Agreement was drafted by Kao and Jones Day while Kao repeatedly represented to Chow that Kao was Chow's attorney. Chow relied on those representations, and Kao knew that Chow relied on those representations. |

| | |
|---|---|
| 113 | By entering into the Operating Agreement with Chow, Kao, as Chow's attorney, entered into a business activity with his client in violation of professional ethics and created an additional conflict of interest. |
| 114 | At no time did Kao advise Chow that professional ethics prohibited him from engaging in a business relationship with Chow without the requisite disclosures (which Kao never provided) and that Kao had created another conflict of interest by doing so. |
| 115 | Kao never advised Chow that Chow should seek independent legal advice in connection with any of the matters set forth above. |
| 118 | As described above (¶¶ 80-86), Kao did not advise Chow to retain another attorney and, in particular, Kao did not advise Chow to retain a criminal defense attorney who was not connected with Jones Day. Chow later retained criminal defense counsel and his conviction was later affirmed. Kao did not advise Chow that he should retain other counsel instead of Kao with regard to Chow's dealings with other matters, including matters involving Fund-Delaware. |
| 121 | In August 2018, before Chow had taken his appeal, Kao asked the Canyon Bridge Entities' lawyers, Jones Day, to draft redemption agreements for the redemption of Common Stock in the Management Corp. and Class A Units in Capital Partners-Delaware, which anticipated Chow's post-redemption ownership interest to be 25%. Chow was still a director, member or stockholder in the Canyon Bridge Entities and was clearly the focus of these draft agreements, yet Kao did not share these drafts with Chow. Kao was still representing to Chow that he was Chow's attorney. |
| 122 | In August and September 2018, while he was in Beijing, and before Chow had taken his appeal, Kao made numerous visits to China Venture, Yitai's owner, and convinced China Venture to join in his efforts to expel Chow from the Canyon Bridge Entities. |
| 123 | Kao, Bingham and Kuo tried to extricate Chow from Capital Partners-Delaware and Management Corp. over the period from approximately August to October 2018. In addition to the actions above, they promised Chow that if he resigned for the Canyon Bridge Entities they would ensure his health care would continue to be paid and that he would always receive the economic benefits of his ownership interests. Chow, however, would not agree to resign or surrender (or reduce) his equity holdings in Capital Partners-Delaware or Management Corp. When Kao, Bingham, and Kuo realized that they could not coax Chow out of the businesses, they took action to improperly strip him of his ownership interests. |
| 127 | Despite the fact that when the stock of Management Corp. was issued there was no vesting schedule imposed on such stock and Chow never agreed to a subsequent vesting schedule, Kao, Bingham, Kuo as directors treated the vesting schedule as effective and stripped Chow of his vested stock in Management Corp. The purported action of the directors and stockholders of Management Corp. were ineffective, invalid, and void. |
| 135 | At all times set forth above, Kao was representing to Chow that he was acting as, and could act as, Chow's attorney (i.e., that he had undivided loyalty to Chow) and Chow believed Kao's representations, relied thereon, and placed his trust and confidence in Kao. |

| | |
|---|---|
| 136 | At all times set forth above, Kao, as Chow's attorney was a fiduciary for Chow and owed fiduciary duties to Chow. |
| 137 | However, Kao in fact had blatant conflicts of interest with Chow, and knew he that he could not ethically act as Chow's attorney and failed to disclose the forgoing fact to Chow, including when Kao: (a) in the third week of December 2016 advised Chow regarding the Operating Agreement, which was drafted to Chow's disadvantage; (b) entered into a business relationship with Chow, from which Kao obtained great personal financial gain at his client's, Chow's, detriment and from Kao's breach of fiduciary duty to Chow; (c) advised Chow regarding FINRA inquiries in 2016 and 2017 to Kao's benefit and the detriment of his client Chow; (d) concealed from Chow in October 2018 that after the purported ouster of Chow from the Canyon Bridge Entities that Kao was planning on transferring Fund-Delaware and Capital Partners-Delaware and control of their assets to Cayman Island entities; and (f) concealed from Chow in 2019 on the dates set forth above that Fund-Delaware and Capital Partners-Delaware had been become Cayman Island entities. |
| 138 | At the time of the forgoing events, Kao, as a fiduciary, suppressed material facts which he had a duty to disclose to Chow. |
| 139 | At the time of the forgoing events, Kao intentionally concealed or suppressed the material facts which he had a duty to disclose with the intent to defraud Chow. |
| 140 | At the time of the forgoing events, Chow was unaware of the facts that Kao concealed or suppressed and would not have acted as he did if he had known of the concealed or suppressed facts. |
| 141 | As a result of the concealment or suppression of the facts by Kao, Chow has sustained damage. |
| 142 | Kao has committed deceit of Chow in violation of Cal. Civ. C. §§ 1709 and 1710.  As a result of Kao's deceit, Chow was harmed for which he seeks an award of damages. |
| 144 | Kao's breached his fiduciary duties imposed on him pursuant to California law to his client, Chow, in the preparation of the Operating Agreement by causing the inclusion of certain provisions, including Sections 19.11, 6.5(a), 6.5(c) and the definition of "Cause," providing for the expulsion of a Member, and the forfeiture of that Member's equity in the Canyon Bridge Entities for the "commission of any activity pertaining to" certain Canyon Bridge Entities "that constitutes fraud or a felony (as determined by a court of competent jurisdiction in a final, non-appealable judgment or in a final non-appealable arbitration."  At the time Kao drafted the Operating Agreement, Kao knew that Sections 6.5(a), 6.5(c) and the definition of "Cause," would be the contractual basis for his later attacks on his client, as Kao knew that FINRA was investigating personnel at Canyon Bridge, including Chow. |

4

| | |
|---|---|
| 145 | Kao was well aware, or should have been, at the time he drafted the Operating Agreement, that Chow might have exposure to an accusation of wrongdoing that might, under the terms of the Kao-prepared Operating Agreement, cause severe material detriment to his client, Chow, and simultaneously result in a great financial and other material benefits to Kao—Chow's lawyer—who had been consistently and repeatedly representing himself to his client, as his unquestionably faithful attorney.  That representation by Kao was an unequivocal, legally binding, and ethically binding representation to Chow that Kao would give his undivided and unquestioned loyalty to Chow.  The duty of a lawyer to given undivided and unquestioned loyalty to his or her client is the sine qua non of what makes a faithful lawyer. |
| 146 | Because of the foregoing, all provisions of the Operating Agreement (including those purporting to allow expulsion of Chow and cause forfeiture of his equity in the Canyon Bridge Entities in financial favor of his purported attorney, Kao), created by Kao himself, while purportedly advising Chow as his attorney, and resulted in a very substantial loss to Chow, and a very substantial financial benefit to Kao, were in violation of Kao's fiduciary duties to Chow. |
| 147 | Kao's actions constituted constructive fraud. |
| 148 | As a result of Kao's constructive fraud Chow has suffered damages. |
| 151 | Kao, Bingham, and Kuo improperly and without justification purported to cause Chow to forfeit his interests in Capital Partners-Delaware and Management Corp. and resulted in an enrichment of Kao, Bingham, and Kuo. |
| 152 | Their actions resulted in an impoverishment of Chow. |
| 153 | The enrichment of Kao, Bingham, and Kuo resulted from the impoverishment of Chow. |
| 154 | There was no justification for the actions that led to the enrichment of Kao, Bingham, and Kuo and the impoverishment of Chow. |
| 155 | As a result of Kao, Bingham, and Kuo's unjust enrichment, Chow has suffered damages. |
| 157 | Kao had a fiduciary duty to Chow as Chow's attorney pursuant to California law. |
| 158 | As described above, Kao's actions constitute a breach of Kao's fiduciary duty to Chow as Chow's attorney. |
| 159 | Kao's breach of his fiduciary duty to Chow proximately caused damages to Chow, in an amount to be determined at trial. |
| 161 | Kao had a fiduciary duty to Chow. Bingham and Kuo knew or should have known that Kao had a fiduciary relationship with Chow. |
| 162 | Kao's actions constitute a breach of Kao's fiduciary duty to Chow as Chow's attorney. |
| 163 | Bingham and Kuo knowingly and substantially assisted and participated in Kao's breach of fiduciary duty to Chow. |
| 164 | Kao's breach of his fiduciary duty to Chow proximately caused damages to Chow, in an amount to be determined at trial. |

| 166 | The Operating Agreement, drafted by Kao to later benefit himself, provided that a Member's equity would be forfeited for "Cause" if the Member is found to have engaged in the specified conduct only as determined by a court of competent jurisdiction in a final, non-appealable judgment.  Thus, Capital Partners-Delaware, managed by Kao, Bingham, and Kuo, had no contractual right to cause a forfeiture on October 9, 2018, because Chow's conviction had not become final and non-appealable, and would not until July 5, 2021, 90 days after the Court of Appeals' decision affirming the conviction was issued on April 6, 2021, when the time for Chow to seek relief from the United States Supreme Court expired. Therefore, Kao, Bingham, and Kuo as managers of Capital Partners-Delaware and directors of Management Corp. caused it to terminate Chow to prevent him from retaining his benefits of Membership in Capital Partners-Delaware. Kao, Bingham, and Kuo exercised discretion to terminate Chow (which was a pretext to avoid the vesting of his Capital Partners-Delaware Class A Units) in bad faith. As such, it prevented Chow from obtaining the benefits under the Operating Agreement. |
|---|---|
| 167 | As the result of the breach of the implied covenants of good faith and fair dealing Chow has been damaged in an amount to be determined at trial. |
| 169 | Chow is a creditor of each of the defendants because he held and holds claims against Defendants for depriving him of his financial interests in the Canyon Bridge Entities, which claims arose before the transfers of Fund-Delaware and Capital Partners-Delaware to Cayman Island domiciled entities. Chow is a creditor of the Fund-Delaware under the Indemnification provisions of Article XI of the L.P. Agreement. |
| 170 | The conversion of the Canyon Bridge Entities from entities domiciled in Delaware to entities purportedly domiciled in the Cayman Islands were transfers (the "Transfers") within the meaning of the Uniform Fraudulent Transfer Act, as adopted in California (California Civil Code section 3439). |
| 171 | Defendants made the Transfers with actual intent to hinder, delay or defraud Chow as a creditor. |

| 172 | The facts showing Defendants' actual intent to hinder, delay or defraud Chow in pursuit of his claims include the following "Badges of Fraud": <br> (a) The Transfers were to insiders; <br> (b) The Defendants retained possession or control of the property transferred after the Transfers; <br> (c) The Transfers were concealed from Chow; <br> (d) Before the Transfers were made, Defendants had wrongfully ousted Chow from the Canyon Bridge Entities and were unjustly enriched by wrongfully taking his equity in the Canyon Bridge Entities; <br> (e) The Transfers were of all the Canyon Bridge Entities' assets; <br> (f) Ownership of the Canyon Bridge Entities' assets, and thus the assets themselves, were removed to a foreign country; <br> (g) The Defendants removed and concealed assets; <br> (h) The value of the consideration received by the Canyon Bridge Delaware Entities for the Transfers was nil and not reasonably equivalent to the value of the asset transferred. <br> (i) The Canyon Bridge Delaware Entities were rendered insolvent by the Transfers; <br> (j) The Management and Capital Partners-Delaware ceased to exist after the Transfers; and <br> (k) The Transfers occurred shortly after a substantial debt was incurred. |
|---|---|
| 173 | Defendants injured Chow by the Transfers. |
| 174 | The Transfers were made by Defendants pursuant to, and in furtherance of, the Conspiracy. |
| 175 | Chow has no adequate remedy at law and is entitled to equitable relief. |
| 176 | Kao, Bingham, Kuo, Capital Partners-Cayman Islands and the Fund-Cayman Islands acted in bad faith in receiving the assets transferred by the Transfers, which included financial and other interests of Chow. |
| 178 | Chow is a creditor of each of the defendants, including the Canyon Bridge Entities because he held and holds claims against Defendants for depriving him of his financial interests in the Canyon Bridge Entities, which claims arose before the transfers of the Fund and Capital Partners from Delaware to Cayman Island domiciled entities. Chow is a creditor of the Fund under the Indemnification provisions of Article XI of the L.P. Agreement. |
| 179 | Defendants made the Transfers with actual intent to hinder, delay or defraud Chow as a creditor. |

| | |
|---|---|
| 180 | The facts showing Defendants' actual intent to hinder, delay or defraud Chow in pursuit of his claims include the following "Badges of Fraud": <br> (a) The Transfers were to insiders; <br> (b) The Defendants retained possession or control of the property transferred after the Transfers; <br> (c) The Transfers were concealed from Chow; <br> (d) Before the Transfers were made, Defendants had wrongfully ousted Chow from the Canyon Bridge Entities and were unjustly enriched by wrongfully taking his equity in the Canyon Bridge Entities; <br> (e) The Transfers were of all the Canyon Bridge Entities' assets; <br> (f) The Ownership of the Canyon Bridge Entities' assets, and thus the assets themselves, were removed to a foreign country; <br> (g) The Defendants removed and concealed assets; <br> (h) The value of the consideration received by the Canyon Bridge Delaware Entities for the Transfers was nil and not reasonably equivalent to the value of the asset transferred. |
| 181 | Defendants injured Chow by the Transfers. |
| 182 | Chow has no adequate remedy at law and is entitled to equitable relief. |
| 183 | The Transfers were made by Defendants pursuant to, and in furtherance of, the Conspiracy. |
| 184 | Chow has no adequate remedy at law and is entitled to equitable relief. |
| 185 | Kao, Bingham, Kuo, Capital Partners-Cayman Islands and the Fund-Cayman Islands acted in bad faith in receiving the assets transferred by the Transfers, which included the financial and other interests of Chow. |
| 187 | Sections 11.02 of the Fund L.P. Agreement and the Operating Agreement require Capital Partners to indemnify Chow. Section 7.04 of the Fund LP Agreement and the Operating Agreement require Capital Partners to pay Chow his share of the management fee. |
| 188 | Capital Partners breached the Fund LP Agreement and the Operating Agreement by failing to indemnify Chow and pay Chow his share of the management fee. |
| 189 | Chow fully performed under the Fund L.P. Agreement and the Operating Agreement. |
| 190 | As a direct result of Capital Partners' breach, Chow has been damaged in an amount to be proven at trial but in excess of $1,517,086.39. |
| 192 | At all relevant times herein, by virtue of their positions as Directors of the Management Corp., Kao, Bingham, and Kuo owed Chow fiduciary duties of care and loyalty. |
| 193 | Management Corp. is the named Manager of Capital Partners-Delaware as such, it owed Chow fiduciary duties of care and loyalty. |
| 194 | In reality, Kao, Bingham, and Kuo materially participated in the management of Capital Partners-Delaware and therefore, they constitute Managers of Capital Partners-Delaware. As such they owed Chow fiduciary duties of care and loyalty. |

| 195 | Kao, Bingham, Kuo and Management Corp. breached their fiduciary duties to Chow. As explained above, Kao, Bingham, and Kuo signed a Written Consent that would effectively obliterate Chow's ownership interests in the Management Corp. upon Chow's termination, which Kao, Bingham, and Kuo carried out the next day. As directors of Management Corp. they also purported to effectuate an invalid attempt by the stockholders to retroactively impose a vesting scheduled on Chow's stock and then purporting to treat the forfeiture as effective. |
|---|---|
| 196 | Such conduct is the antithesis of the good faith and loyal behavior required of corporate fiduciaries. |
| 197 | Kao, Bingham, and Kuo's bad faith, disloyal actions have harmed Chow by, among other things, causing him to lose his 40% ownership interests in each of Capital Partners-Delaware and Management Corp., entities whose financial success is chiefly due to Chow's efforts. |
| 198 | Chow was a stockholder or member at all relevant times, including during the time of the wrongdoing alleged herein. |
| 199 | As a direct result of Kao, Bingham, and Kuo's breach, Chow has been damaged in an amount to be proven at trial but in excess of $5,000,000. |