IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BENJAMIN BIN CHOW,                          )
                                            )
            Plaintiff,                      )
                                            )
    v.                                      )     C.A. No. 1:22-cv-00947-JLH-SRF
                                            )
CANYON BRIDGE CAPITAL                       )
PARTNERS, LLC, a Cayman Islands             )
Limited Liability Company, CANYON          )
BRIDGE CAPITAL MANAGEMENT,                  )
LLC, a Delaware Limited Liability           )
Company, CANYON BRIDGE FUND I,             )
LP, a Cayman Islands Limited Partnership,   )
HONG JOHN KAO, HEBER RAYMOND                )
BINGHAM, and PETER CHIN KUO,                )
                                            )
            Defendants.                      )

## REPORT AND RECOMMENDATION

Plaintiff, Benjamin Bin Chow, brought this suit against Defendants, Canyon Bridge

Capital Partners, LLC (hereinafter, "CB Partners"), Canyon Bridge Fund I, LP (hereinafter "CB

Fund") and Canyon Bridge Capital Management, LLC (hereinafter, "CB Management"),

(collectively the " CB Entities"),  Hong John Kao, Heber Raymond Bingham, and Peter Chin

Kuo (collectively the " Individual Defendants") for alleged fraud, breach of contract, breach of

fiduciary duties, and fraudulent transfers effectively eliminating Plaintiff's financial and

ownership interests in a private equity fund he established.  (D.I. 1-1 at ¶ 46–100)[1]  Pending

before the court are Defendants' motions for judgment on the pleadings[2] and summary

---

[1] The First Amended Complaint is found at D.I. 1-1, Exhibit A5, it is found through the page
ranges 45 through 100, all further references to D.I. 1-1 refer to this page range and exhibit.
[2] The briefing submitted for the motion for judgment on the pleadings can be found at: D.I. 72,
D.I. 73, D.I. 77, D.I. 80, D.I. 81.

judgment[3], pursuant to Federal Rules of Civil Procedure 12(c) and 56(a), respectively. (D.I. 72, D.I. 134)[4] For the reasons that follow, the court recommends that Defendants' motion for summary judgment be **GRANTED**.

## I. BACKGROUND

### A. Factual History

#### i. The Formation of the CB Entities

In 2016, Plaintiff Benjamin Bin Chow ("Plaintiff") founded and was the sole owner of a Delaware corporation known as Canyon Bridge Capital Partners, Inc., a private equity fund focusing on global technology investments. (D.I 1-1 at ¶ 46-100) As of October 2016, Plaintiff personally conducted investor meetings and negotiations and secured approximately $1.5 billion in limited partner commitments. *Id.* The Individual Defendants, Hong John Kao ("Kao"), Heber Raymond Bingham ("Bingham"), and Peter Chin Kuo ("Kuo"), did not participate in those fundraising efforts and did not commit to joining Canyon Bridge until after those commitments were obtained. *Id.*

Plaintiff alleges that his friend, Kao, acted as his attorney in the formation of a series of business entities associated with Plaintiff's investments. (*Id.* at ¶ 31) In September and October of 2016, Kao drafted the documents to convert Canyon Bridge Capital Partners, Inc. to a Delaware limited liability company (hereinafter "Capital Partners-LLC-DE") and the business

---

[3] The briefing submitted for the motion for summary judgment can be found at D.I. 134, D.I. 135, D.I. 136, D.I.137, D.I.140, D.I. 141, D.I. 142, D.I. 143, D.I. 147, D.I. 148, D.I. 149, D.I. 150, D.I. 151.

[4] The arguments in Defendants' motion for summary judgment (D.I. 134) mirror the arguments raised in the motion for judgment on the pleadings. (D.I. 72) Therefore, this Report and Recommendation regarding Defendants' motion for summary judgment on a complete record moots the need to address the same arguments in Defendants' motion for judgment on the pleadings, and the court recommends denying the motion for judgment on the pleadings as moot.

formation documents for the following entities, which were filed at his direction with the Delaware Secretary of State: Canyon Bridge Capital Management Corp., a Delaware corporation (hereinafter "Management Corp.-DE"), and Canyon Bridge Fund I, LP, a Delaware limited partnership (hereinafter "CB Fund-DE") (collectively the "CB-DE Entities"). (D.I. 1-1 at ¶¶ 56–58, 66) Management Corp.-DE was the named manager of Canyon Bridge Capital Partners-LLC-DE ("CB Partners-DE") and the investment manager of CB Fund-DE. (*Id.* at ¶¶ 23–24) CB Partners-DE was the general partner of CB Fund-DE. (*E.g.*, *id.* at ¶ 19)

In October of 2016, Plaintiff met with Kao and the other Individual Defendants, Bingham and Kuo, in Jones Day's San Francisco office and asked them to join the CB Entities. (*Id.* at ¶ 67) They agreed, and Kao began drafting a limited liability company ("LLC") Operating Agreement that set forth the rights and obligations of the Individual Defendants and Management Corp-DE in managing CB Partners-DE. (D.I. 137 at Ex. 2) (hereinafter "Operating Agreement")) In addition to the Operating Agreement, Kao drafted a limited partnership agreement governing CB Fund-DE. (D.I. 137 at Ex. 1) (hereinafter "LP Agreement")

### ii. Kao's Relationship to Jones Day and Canyon Bridge

Before joining Canyon Bridge, Kao was a transactional partner at Jones Day and served as partner in charge of the firm's Beijing office. (D.I. 136 at ¶ 2, *see also* D.I. 137, Ex 22 at A618) In 2016, Plaintiff retained Jones Day on behalf of CB Partners to organize CB Fund and executed an engagement letter providing that Jones Day and its personnel were not representing any owner or affiliate individually. (D.I. 137, Ex 3 at A125) Kao resigned from Jones Day in late 2016 and later served as General Counsel to Canyon Bridge from approximately January 2017, to early 2019. (D.I. 136 at ¶ 4, *see also* D.I. 137, Ex 22 at A618)

3

### iii. Criminal Proceedings and Civil Enforcement Action Against Plaintiff

Plaintiff alleges that in November of 2016, Kao became aware that Plaintiff was under investigation by the Financial Industry Regulatory Authority ("FINRA"). (D.I. 1-1 at ¶63) Plaintiff further alleges that Kao drafted the CB Partners' Operating Agreement so that the Individual Defendants would be enriched through the forfeiture of Plaintiff's financial and ownership interest in the CB Entities in the event of a final and non-appealable felony conviction. (Id. at ¶¶ 71-74)

On September 1, 2017, the United States Attorney's Office for the Southern District of New York filed a criminal complaint charging Plaintiff with securities fraud "for sharing material nonpublic information about the potential acquisition of Lattice Semiconductor Corporation by the Canyon Bridge Entities." (D.I. 136 at ¶ 9, D.I. 141 at ¶ 9, *see also U.S. v. Benjamin Bin Chow*, Case No. 1:17-cr-00667-GHW (S.D.N.Y.)) On April 24, 2018, Plaintiff was convicted of securities fraud, conspiracy to commit securities fraud, and six counts of insider trading. (D.I. 136 at ¶11, D.I. 141 at ¶ 11 ; *see also United States v. Chow*, Case No. 1:17-cr-00667-GHW at D.I. 113)[5] The Securities and Exchange Commission ("SEC") also filed a civil lawsuit against Plaintiff arising from the same unlawful conduct. *In re Benjamin Bin Chow, Investment Advisers Act Release* No. 6109, Admin. Proc. File No. 3-21045, 2022 at *2 (S.E.C. Sept. 8, 2022)); D.I. 137, Ex 13-14 at A217. Pursuant to the consent judgment, Plaintiff is prohibited from associating with any "broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization." *Id.*

---

[5] Plaintiff appealed his conviction in the Southern District of New York to the Second Circuit on February 5, 2019. (FAC at ¶ 86) His conviction was affirmed on April 6, 2021. (*Id.*)

4

### iv. Chow's Separation from Canyon Bridge

Following Plaintiff's conviction, the Individual Defendants voted to remove him from the partnership. (D.I. 137, Ex. 7 at A164-A165)[6] Plaintiff subsequently signed resignation letters relinquishing certain director and officer roles with affiliated entities. (D.I. 136 at ¶17, D.I. 141 at ¶17; *see also* D.I. 137, Ex. 6 at A147-A151)[7]

### v. Change of Domicile for CB Partners and CB Funds

In May 2019, CB Partners and CB Fund-DE were redomiciled from Delaware to the Cayman Islands to minimize regulatory compliance costs associated with operating as a U.S.-registered investment company. (D.I. 136 at ¶ 20; D.I. 141 at ¶ 20)

### B. Procedural History

On October 8, 2021, Plaintiff filed this action in the Delaware Court of Chancery and filed the FAC on June 10, 2022.[8] (D.I. 1-1 at 7–29, 46–100) The FAC asserts ten (10) counts:

- Count I alleges deceit under California law, Cal. Civ. C. §§ 1709–10, against Kao (D.I. 1-1 at ¶¶ 134–42)

- Count II alleges constructive fraud against Kao (*Id.* at ¶¶ 143–48)

- Count III alleges unjust enrichment against the Individual Defendants (*Id.* at ¶¶ 149–55)

- Count IV alleges breach of fiduciary duty against Kao regarding his conflicts of interest as Plaintiff's attorney (*Id.* at ¶¶ 156–59)

---

[6] Plaintiff admits that this evidence exists within the record of his criminal proceedings yet disputes its truthfulness. (D.I. 141 at ¶15)

[7] The parties dispute whether the subsequent resignations were voluntary or involuntary. (D.I. 136 at ¶ 17; D.I. 141 at ¶ 17)

[8] The original complaint contained three counts: Count I asserted breach of contract against Capital Partners-CI; Count II asserted breach of fiduciary duty against the Individual Defendants; and Count III asserted declaratory judgments against all Defendants. (D.I. 1-1 at 7–29)

5

- Count V alleges aiding and abetting a breach of fiduciary duty against Bingham and Kuo (*Id.* at ¶¶ 160–64)

- Count VI alleges breach of the implied covenant of good faith and fair dealing against CB Management, CB Partners, and the Individual Defendants (*Id.* at ¶¶ 165–67)

- Counts VII and VIII alleges fraudulent transfer under California law, Cal. Civ. C. § 3439, and common law, respectively, against all Defendants (D.I. 1-1 at ¶¶ 168–85)

- Count IX alleges breach of contract against CB Partners (*Id.* at ¶¶ 186–90)

- Count X alleges breach of fiduciary duty against the Individual Defendants and Management Corp.-DE for duties they owed to Plaintiff as a stockholder or member of Capital Partners-LLC-DE. (*Id.* at ¶¶ 191–99)[9]

On July 18, 2022, Defendants timely removed this case to the District of Delaware. (*See* D.I. 1) On July 25, 2022, the Cayman Entities and the Individual Defendants filed a motion to dismiss for insufficiency of service of process and lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2). (D.I. 12) On the same date, Management LLC-DE filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. (D.I. 15) On July 22, 2024, I issued a Report and Recommendation denying the Cayman Entities and the Individual Defendants' Motion to Dismiss based on insufficient service of process and lack of personal jurisdiction and granting without prejudice CB Management's Motion to Dismiss for failure to state a claim. Plaintiff was granted leave to file a second amended complaint. (D.I. 46 at 34) On September 30, 2024, Judge Hall issued an Oral Order overruling Defendants' objections to the Report and Recommendation and granting Plaintiff

---

[9] The FAC erroneously lists Management Corp.-DE as a Defendant in Count X, even though Management Corp.-DE no longer exists and is not named in the pleading. (*See* D.I. 1-1 at ¶¶ 22, 191–99)

leave to amend his complaint within thirty days. (D.I. 64) Plaintiff did not further amend his complaint. On October 3, 2024, the court entered a scheduling order. (D.I. 65) The order included a discovery deadline of August 2, 2025. *Id* at ¶3(b).

On December 19, 2024, Defendants filed a motion for judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c) (D.I. 72), which was fully briefed. (D.I. 80, D.I. 81) On October 2, 2025, Defendants filed a motion for summary judgment, pursuant to Federal Rules of Civil Procedure 56(a), re-asserting the same arguments based on the complete factual record. (D.I. 135) Plaintiff submitted his answering brief on October 16, 2025. (D.I 140) On October 24, 2025, Defendants filed their reply. (D.I. 147) On January 20, 2026, the court held oral arguments on the instant motion. Because the court recommends granting the motion for summary judgment after a review of the evidentiary record, the motion for judgment on the pleadings is denied as moot.

## II. LEGAL STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the

7

light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).

When facts necessary to oppose a motion for summary judgment are unavailable to the nonmoving party, Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). An adequate affidavit or declaration must identify: (a) the particular information sought; (b) how that information would preclude summary judgment if disclosed; and (c) why the information was not previously obtained. *See Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015)

## III. CHOICE OF LAW

The court's jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332(a)(1) (2022). Therefore, the court applies the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The court's recommendations herein are based upon the application of Delaware law except where the parties have briefed the arguments under California law.[10] See *Richey v. Showtime Networks Inc.*, No. 1:24-CV-00134-SB, 2025 WL 843278, at *2 (D. Del. Mar. 18, 2025) (holding "[courts] do not wade through a full-blown choice-of-law analysis. When the parties have not raised this issue or even hinted at what other states' law says, the wiser course is to follow their lead and apply the law used by their briefing."

---

[10] Defendants question the Plaintiff's application of California law but do not raise a dispute about it and respond accordingly. (D.I. 135 at 10)

## IV. DISCUSSION

### A.      Plaintiff Reliance on Misquoted or Non-Existent Authority

As a preliminary matter, the court acknowledges that Plaintiff is representing himself *pro se*, and views his court filings liberally. *See Cyrus v. Hogsten*, No. 3:06-CV-02265, 2007 WL 88745 at *6 (M.D. Pa. Jan. 9, 2007); *see also Erickson*, 551 U.S. at 94 ("however inartfully pleaded, [a *pro se* party] must be held to less stringent standards than formal pleadings drafted by lawyers.")

Notwithstanding Plaintiff's *pro se* status, the court will not consider material in Plaintiff's answering brief generated by an Artificial Intelligence ("AI") legal research tool, such as hallucinated cases or actual cases in which Plaintiff cites to non-existent or misquoted language. (D.I. 140) "AI can generate a legal proposition that appears to come from a judicial opinion and is even properly cited under The Bluebook Uniform System of Citation; but there is just one problem—it's not real. AI made it up. And those who rely on AI blindly, do so at their own peril." *OTG New York, Inc. v. OTTOGI Am., Inc.*, No. 24-CV-07209 (BRM) (JRA), 2025 WL 2671460, at *2 (D.N.J. Sept. 18, 2025).

Accordingly, the court identifies below the cases it will not consider in the following discussion in an effort to preserve judicial resources already expended addressing this issue:

| Case Cited by Plaintiff | Plaintiff's Improper Citation | Actual Language |
|---|---|---|
| *Lister v. State Bar*, 51 Cal. 3d 1117, 1126 (1990)<br><br>(D.I. 140 at 8) | Plaintiff cites to a quote in the case asserting, "the [attorney/client] relationship 'is created by the conduct of the parties.' *Lister v. State Bar*, 51 Cal. 3d 1117, 1126 (1990)"<br>D.I. 140 at 14 | The asserted quote appears nowhere within the cited case. |

| | | |
|---|---|---|
| *Jordache Enters., Inc. v. Brobeck*, 18 Cal. 4th 739, 743 (1998)<br><br>(D.I. 140 at 10) | Plaintiff cites to a quote in the case asserting, "The statute [Cal. Code Civ. Proc §340.6(a)] is tolled until a plaintiff sustains an injury 'legally cognizable as damages based on the asserted errors or omissions of an attorney.' *Jordache Enters., Inc. v. Brobeck*, 18 Cal. 4th 739, 743 (1998)" D.I. 140 at 16 | The cited case does address the Cal. Code Civ. Proc §340.6(a) tolling period. The given quote does not appear anywhere in the case. Instead, the actual language in the case is: "Actual injury occurs when *the client suffers any loss* or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." *Id.* at 743. |
| *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 346 (2014)<br><br>(D.I. 140 at 11) | Plaintiff cites to a quote in the case asserting, "Actual knowledge" requires only awareness 'that the primary actor's conduct has breached a fiduciary duty.' [*Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 346 (2014)]" | This quote is hallucinated within the *Nasrawi* court opinion. |
| *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1108 (1988)<br><br>(D.I. 140 at 12) | Plaintiff cites to the case in support of his argument that Bingham's refusal to admit that Kao served as general counsel served as an "implausible denial suggest[ing] awareness of Kao's conflicted role." D.I. 140 at 18 | The *Molko* decision is completely inapposite to the facts of the instant case and the comment Plaintiff attributes to it. |
| *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 977 (Del. Ch. 2000)<br><br>(D.I. 140 at 13) | Plaintiff cites to *Cresent/Mach I Partners* in support of his argument that, "Delaware equity also recognizes unjust enrichment where contractual rights are exercised in bad faith or through fiduciary misconduct." D.I. 140 at 19 | In *Cresent/Mach I Partners* the court denied a motion to dismiss requesting the remedy of a constructive trust when the pleading alleged a party would be, "unjustly enriched at the expense of the minority stockholders..." *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000). Nowhere in this case does the court apply the broad rule Plaintiff relies upon in his brief. |

| *Morgan v. El Paso Co.*, 2005 WL 106477, at 2 (Del. Ch. Jan. 6, 2005)  (D.I. 140 at 19) | The case at issue does not exist anywhere within the Court of Chancery or Delaware court system. | The case is nonexistent. |
|---|---|---|

Defendants pointed out within their reply brief Plaintiff's use of AI generated legal research. (D.I. 147 at 2) Plaintiff responded with a notice of errata. (D.I. 149) Defendants objected to Plaintiff's errata sheet because it cited new legal authorities and arguments and is, in effect, a surreply brief filed without leave of court. (D.I. 150) Plaintiff's notice of errata fails to explain or acknowledge responsibility for inclusion of the AI generated case authorities. Plaintiff fails to acknowledge that the court and opposing parties invested significant time and resources in attempting to fairly consider material subsequently found to be hallucinated and/or inaccurately quoted by Plaintiff. Plaintiff served an errata sheet that downplays the significance of the inaccurate or nonexistent material and offers substituted corrections Plaintiff claims are limited to, "citation accuracy, appendix references, and typographical issues, [that] do not alter the substantive legal arguments or factual contentions set forth in the brief." (D.I. 149 at 1) The court rejects Plaintiff's proposed errata submission to the extent it introduces new case authorities and expands arguments to which Defendants have no opportunity to respond.[11]

Notwithstanding whether Plaintiff's use of AI generated material constitutes a sufficient basis on its own to grant Defendants' motion for summary judgment, the court turns to consideration of the substantive arguments raised in the motion.

---

[11] The court accepts the notice of errata (D.I. 149) as to ¶¶ 1–3, 9, and 11, as those revisions correct only typographical or appendix errors. The court rejects ¶¶ 4–8, 10, and 12, however, because those proposed changes seek to introduce new legal authority. *Id.*

**B. Plaintiff's Claims for Deceit (Count I), Constructive Fraud (Count II), Breach of Fiduciary Duty (Count IV), and Aiding and Abetting (Count V) Cannot Survive Summary Judgment**

Plaintiff's claims for deceit (Count I), constructive fraud (Count II), breach of fiduciary duty (Count IV), and aiding and abetting breach of fiduciary duty (Count V) fail as a matter of law because no triable issue of fact exists on the threshold issue that Kao and Plaintiff did not have an attorney-client relationship. Separately, Plaintiff's constructive fraud (II) an breach of fiduciary claims (IV) are time-barred under California law.

The only attorney engagement letter that exists in the record is dated August 10, 2016, in which Kao and his firm entered into an attorney/client relationship with Canyon Bridge. The engagement letter was signed by Plaintiff as the managing partner of Canyon Bridge. (D.I. 137, Ex 3 at A125, *see also* D.I. 136 at ¶ 3) Plaintiff admits that the letter expressly disclaimed that Kao and Jones Day were engaged to represent him personally. *Id. (see also* D.I. 140 at 8, D.I. 141 at ¶ 6) Plaintiff argues that despite the date of the letter, Plaintiff did not sign the letter until December of 2016, and the Canyon Bridge entities identified in the letter did not exist until October of 2016. (D.I. 140 at 14; D.I. 143, Ex. 130 at B620) Plaintiff's date discrepancy argument does not create a triable issue of fact. No reasonable juror could find any ambiguity in Kao's express disclaimer that he was not engaged to represent Plaintiff personally.

Applying California law, Defendants argue that the court should examine the totality of circumstances to determine whether an attorney-client relationship was created. (D.I. 135 at 8) Factor to consider are as follows:

> In determining whether an attorney-client relationship is created on
> the basis of an implied contract, the court examines the totality of
> the circumstances. Some of the factors to consider are: (1) the
> nature and extent of the contacts between the attorney and the

13

purported client; (2) whether the purported client divulged confidential information to the attorney; (3) whether the attorney provided the purported client with legal advice; and (4) whether the purported client sought or paid for the attorney's services.

*Fink v. Montes*, 44 F.Supp.2d 1052, 1059 (C.D.Cal.,1999). Plaintiff's answering brief focuses on his subjective belief that Kao was his lawyer and fails to address the foregoing factors. Plaintiff cannot define when the alleged relationship began or ended, he claims that "legal advice was exchanged" (D.I. 141 at ¶6) but does not identify any legal advice he received in a personal capacity, and he did not pay Kao for any personal legal services. (D.I. 136 at ¶ 6, D.I. 141 at ¶ 6) Furthermore, Plaintiff represented to the federal court in his criminal case that the only attorneys representing him were from Millbank. (*United States v. Chow*, 17-cv-00667, D.I. 95 at 2-3, S.D.N.Y (2018)).

Plaintiff's answering brief contains inaccurate quotations from case authorities to support his argument that an attorney-client relationship with Kao was created by the conduct of the parties. (D.I. 140 at 14) (citing *Lister v. State Bar*, 51 Cal. 3d 1117, 1126 (1990)). Plaintiff's failure to correctly cite legal authorities does not create a material issue of fact as to the existence of an attorney-client relationship with Kao. Plaintiff's self-serving declaration that he believed Kao was his attorney is insufficient to create a factual dispute. (D.I. 143, Ex 140 at B715) (*see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)) (holding conclusory self-serving affidavits "cannot create genuine issues of material fact.")

14

Plaintiff argues that his conversations with Kao (D.I. 143, Ex 108 at B228-B295), suggest that Kao provided legal advice to Plaintiff in his criminal case. Specifically, Plaintiff heavily relies on the following WeChat conversation with Kao:[12]

> Benjamin Chow: Not sure if I can share this [in communicating about his criminal sentencing] with others outside of my lawyers. You can still my lawyer.[13]
> Kao: Ok

(D.I. 138, Ex 108 at B256)  The foregoing messages, considered in the totality of the circumstances do not raise a material dispute of fact concerning whether Kao acted as Plaintiff's attorney. Plaintiff admitted in his deposition that he never paid Kao for any legal services and Kao was "general counsel [for Canyon Bridge], he was getting paid [for his duties to Canyon Bridge]. (D.I. 137, Ex 16 at A386)

The WeChat conversations Plaintiff submitted in his briefing represent conversations between friends rather than between an attorney and his client, as demonstrated in the following example:

> Kao: or maybe you just tell your best friends and didnt tell me [that you were going on a skip trip], so now i am hurt

---

[12] Plaintiff contends that communications with Kao (D.I. 143 at Ex. 108-110) occurred through a messaging application known as WeChat. WeChat is "China's most popular messaging app" that allows users to message using an internet connection. Arjun Kharpal, *Everything You Need to Know About WeChat — China's Biggest Messaging App*, CNBC (Feb. 4, 2019), https://www.cnbc.com/2019/02/04/what-is-wechat-china-biggest-messaging-app.html.

[13] In Plaintiff's answering brief, he adds an additional word to the quoted statement so it reads, "you can still [be] my lawyer." (D.I. 140 at 9)  Defendants object to Plaintiff's editing of the WeChat message from its original form. (D.I. 147 at 2)  The court will not consider Plaintiff's alteration of the record in support of his contentions.

*Id* at B284. During Plaintiff's criminal trial, Kao asks to attend Plaintiff's sentencing solely to "give [Plaintiff] support." *Id* at B268. Furthermore, the record supports that when substantive legal issues arose, Kao urged Plaintiff to speak with his attorneys at Milbank. *Id* at B234, B239.

In summary, Plaintiff's argument that Kao was his personal attorney is based upon his subjective belief and is unsupported by the record or legal authority.

Assuming, *arguendo*, that an attorney-client relationship was created, Plaintiff's claims for constructive fraud (Count II) and breach of fiduciary duty (Count IV) are nonetheless time barred under California law.

California Code of Civil Procedure § 340.6(a), provides in relevant part:

> "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission..."

CCP § 340.6. Defendants contend that Counts II and IV arise from alleged violations of professional obligations in the course of providing legal services and therefore fall squarely within § 340.6(a)'s one-year limitations period. (D.I. 135 at 18) *See, Levin v. Graham & James*, 37 Cal. App. 4th 798, 805 (1995), *Austin v. Medicis*, 21 Cal. App. 5th 577, 587 (2018) (holding constructive-fraud claims are not exempt from §340.6(a)), and *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1121–22 (2014) (applying §340.6 to breach-of-fiduciary-duty claims). Defendants further assert that Plaintiff's own interrogatory responses demonstrate that he "knew of the facts constituting the purportedly wrongful conduct" no later than October 2018, when he was involuntarily terminated, and thus his claims, filed in October 2021, are untimely. (D.I. 135 at 19, *see also* D.I. 137, Ex 17 at A584-A585)

16

Plaintiff argues that the accrual of such claims began in October of 2018, when he was involuntarily terminated from CB Management Corp-DE., and the claims continued to accrue through 2019 when the CB entities were redomiciled as Cayman entities. (D.I. 137, Ex 17 at A591-A592) (*See also,* part I(A) *supra*)) There is a one-year statute of limitations under California Code of Civil Procedure § 340.6(a). Plaintiff cannot reasonably dispute he knew of facts constituting these claims no later than October 2018, yet this suit was not filed until October 8, 2021, as such the claims are time-barred. (D.I. 1 at 1)

Plaintiff relies on an inaccurate quote in a case citation in an effort to avoid the statute of limitations. (D.I. 140 at 10) (citing *Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 743) Plaintiff alleges a new position in his answering brief that the limitations period did not begin to run until July 5, 2021, when his conviction purportedly became "final."[14] (D.I. 140 at 10)

Plaintiff further argues that the discovery rule independently renders his claims timely. He asserts that he did not discover the full scope of Kao's alleged misconduct until July 2021, when Defendant Kuo produced key organizational documents revealing the concealed forfeiture provisions, redomiciliation steps, and the alleged coordinated scheme. (D.I. 143, Ex 111 at B343-B347) However, at that time, Plaintiff had already been ousted from the Canyon Bridge Entities, and as of May 2019, the CB Entities were redomiciled from Delaware to the Cayman Islands. (D.I. 1-1 at ¶132) Plaintiff fails to identify any actionable conduct on the part of the Defendants beyond May of 2019, that would save his claims from being time-barred.

---

[14] In Plaintiff's answering brief, he contends his conviction became final on July 5, 2021, upon expiration of his time to file a petition in the Supreme Court of the United States. (D.I. 140 at 10)

Finally, Plaintiff fails to demonstrate a triable issue of fact as to the Aiding and Abetting claim (Count V). Plaintiff admits that Bingham and Kuo had no basis to know that Plaintiff ever considered Kao to be his personal attorney. (D.I. 143, Ex 16 at A403) In response, Plaintiff inaccurately quotes legal authority and provides citations to cases that have no relevance to the Aiding and Abetting claims. (D.I. 140 at 11-12) (citing *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 346 (2014); *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1108 (1988)).

Under California law, Aiding and Abetting require the following elements:

> 1) "a third party's breach of fiduciary duties owed to plaintiff"; 2) "defendant's actual knowledge of that breach of fiduciary duties"; 3) "substantial assistance or encouragement by defendant to the third party's breach"; and 4) "defendant's conduct was a substantial factor in causing harm to plaintiff."

*Nasrawi v. Buck Consultants LLC,* 231 Cal. App. 4th 328, 343 (Cal. Ct. App. 2014) (citations omitted). (D.I. 135 at 14) In his brief, Plaintiff argues that "'Actual Knowledge' requires only awareness" that the primary actor's conduct has breached a fiduciary duty." (D.I. 140 at 11) Because this quote does not appear anywhere in the case Plaintiff cites (*see*, Section IV(A), *supra*) the court will not consider it.

Defendants contend Bingham and Kuo lacked any knowledge that Kao acted as Plaintiff's personal counsel (D.I. 145 at 14), Plaintiff alleges in his self-serving affidavit that, in November 2019, Kuo acknowledged Kao's conflict of interest by informing Plaintiff that Kao "had acted both as attorney and as a beneficiary in drafting the Canyon Bridge fund-formation documents." (D.I. 143, Ex. 140; Ex. 109 at B288–289).

Plaintiff further argues that Bingham and Kuo substantially assisted Kao's breaches by taking actions that directly implemented and enabled Kao's equity forfeiture in the Operating Agreement, namely, by participating in the October 8, 2018, board action removing Plaintiff

18

without notice, and later facilitating the 2019 redomiciliation. (D.I. 140 at 12, D.I. 143, Ex 114 at B484-487) Plaintiff claims these actions resulted in Plaintiff's loss of equity, and argues that a reasonable jury could conclude that such conduct constituted substantial assistance. *Id.*

But Plaintiff makes these assertions in contradiction of his sworn testimony without citing to evidence in the record and legal authority. At his deposition, Plaintiff testified:

> Defendant: What is the evidence that you can identify, if any, that shows Peter and Ray actually formed a belief that John was your personal lawyer?
> Plaintiff: I don't know.
> Defendant: You don't have any; right?
> Plaintiff: Yeah.

(D.I. 143, Ex 16 at A403)

Plaintiff further argues that Bingham's refusal to acknowledge in his deposition the fact that Kao acted as general counsel for [CB Entities] is an "implausible denial" that supports an adverse inference against Bingham. (D.I. 140 at 12) Plaintiff cannot rely on his own bare allegations to create a genuine dispute of fact on this issue. *See In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class,* 868 F.3d 132, 167 (3d Cir. 2017) quoting *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat [entry of] summary judgment."

Therefore, the court recommends **GRANTING** Defendants' motion for summary judgment with regard to Plaintiff's Claims for Deceit (Count I), Constructive Fraud (Count II), Breach of Fiduciary Duty (Count IV), and Aiding and Abetting (Count V).

19

**C. Plaintiff's Claim for Unjust Enrichment (Count III) and Breach of the Covenant of Good Faith & Fair Dealing (Count IV) Cannot Survive Summary Judgment**

Defendants contend that Plaintiff waived his opposition to dismissal of the unjust enrichment and breach of contract claims (D.I. 135 at 14) when Defendants moved for judgment on the pleadings. (D.I. 72) Plaintiff argues that Count III "was neither waived nor forfeited[,]" as "[r]ule 12(c) stage does not bar reliance on discovery evidence supporting a properly pleaded and factually developed claim." (D.I. 140 at 12) Plaintiff's argument fails because it depends upon misquoted case law. (D.I. 140 at 13) (citing *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 977 (Del. Ch. 2000)).

Moreover, even if it is assumed Plaintiff's opposition is not waived, Counts III and IV cannot survive summary judgment because Plaintiff admits that these claims are based on the alleged breach of an express written contract and are identical to his breach of contract claims. (D.I. 143, Ex 16 at A398-A399) *W. Shore Home, LLC v. Chappell*, No. 1:22-CV-00204, 2024 WL 2962842 as *8 (M.D. Pa. June 12, 2024) (holding "unjust enrichment... is not a basis for damages under breach of contract.")

In addition, Defendants move for summary judgment on Plaintiff's good faith and fair dealing claim because this court has already determined in its prior Report and Recommendation that the count is "in essence, a restatement of the breach of the Operating Agreement." (D.I. 46 at 30) Judge Hall adopted the court's recommendation dismissing Count IV. (D.I. 64) The Plaintiff was granted leave to amend his pleading but did not do so. *Id*. Therefore, the Plaintiff cannot revive this claim in his answering brief.

20

Accordingly, Therefore, the court recommends **GRANTING** Defendants' motion for summary judgment as to Plaintiff's claims for Unjust Enrichment (Count III) and Breach of the Covenant of Good Faith & Fair Dealing (Count VI).

## D. Plaintiff's Claim for Fraudulent Transfer (Counts VII and VIII) Cannot Survive Summary Judgment

Plaintiff fails to demonstrate any triable issue of fact exists as to his fraudulent transfer claims. There is no evidence in the record to create a dispute of fact that the purpose of the redomiciliations were done with the actual intent to hinder, delay, or defraud. Plaintiff has not identified any other facts in the record to dispute whether the CB Entities' change of domicile to the Cayman Islands was for any purpose other than minimization of regulatory compliance costs.

Plaintiff's fraudulent transfer claim under the California Voidable Transfer Act (CUTVA) fails as he fails to identify any "transfer" within the statutory definition. (D.I. 135 at 21)  The relevant sections of the CUVTA provides:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation[.]

Cal. Civ. Code § 3439.04 (West). Plaintiff's common law claim under California law also fails as it is based upon the same elements as the statutory claim. (D.I. 135 at 22) (citing *Kelleher v. Kelleher*, No. 2015 WL 5693726, at *13 (N.D. Cal. Sept. 29, 2015)) (relying on the same factors as listed within the CUVTA).

21

Plaintiff identifies nothing in the record identifying what assets, if any, were transferred, nor does he provide evidence or even attempt to show that any transfer was made with the intent to 'hinder, delay, or defraud any creditor of the debtor' under the CUVTA. Instead, Plaintiff offers only conclusory argument that unspecified 'transfers' occurred, without supporting facts in the record to satisfy the required statutory elements. (D.I. 1-1 at ¶¶ 168–176)  Such conclusory allegations cannot create a genuine dispute of material fact.

Plaintiff further argues that he is 'a creditor of the Fund' under the indemnification provisions of Article XI of the LP Agreement without any explanation, factual development or legal authority supporting his argument. (D.I. 1-1 at ¶ 170) (*see also* D.I. 137, Ex 1 at A52) Moreover, the record contains several instances where he made representations about his indebtedness to Canyon Bridge, such as stated those in his November 2018, sentencing memorandum in his criminal proceeding, "With heavy hearts, [Plaintiff's partners] voted their founder and thought leader out of the partnership and left [Plaintiff] with a debt of over $8 million in attorneys' fees owed to Canyon Bridge." (D.I. 137, Ex 7 at A165, *see also* Ex 15 at A223, Ex. 16 at A325 and A449)

Plaintiff has failed to cite to any evidence in the record to create a genuine dispute of fact regarding any alleged fraudulent transfer which would satisfy the statutory or common law requirements and, instead, relies only upon bare conclusions. Viewing the record in the light most favorable to Plaintiff, no reasonable juror could find that Plaintiff is a "creditor," a transfer occurred, or that Defendants acted with intent to hinder, delay or defraud.

Therefore, the court recommends **GRANTING** Defendants' motion for summary judgment as to Plaintiff's claims for Fraudulent Transfers (Counts VII and VIII).

22

**E. Plaintiff's Claim for Breach of Contract (Count IX) Cannot Survive Summary Judgment**

Plaintiff sued CB Partners for alleged breach of sections 7.04 and 11.02 of the LP Agreement to which it was not a party. (D.I. 1-1)  Plaintiff cites no authority for his argument that, as a general partner of CB Fund-DE, CB Partners should be liable for breach of the LP Agreement. Plaintiff advances his breach of contract claim against CB Partners but the contractual provisions he asserts in the FAC are contained in the LP Agreement and do not exist in the Operating Agreement.  (D.I. 140 at 17)

Even if CB Partners was somehow bound by section 11.02 of the LP Agreement, that provision contains an exception precluding indemnification for damages resulting from "Disabling Conduct" of a "Covered Person." (D.I. 137, Ex. 1 at A52)  "Disabling Conduct" is defined in the LP Agreement as "gross negligence, actual fraud or willful misconduct of such Person…" *Id.* at A10. It is undisputed that Plaintiff was criminally convicted of offenses that meet the definition. Plaintiff asks the court to disregard the "Disabling Conduct" language, despite pleading in the FAC that Defendants breached this section of the LP Agreement in which the language appears. (D.I. 1-1 at ¶187)

Defendants contend that Plaintiffs breach of contract claim is also deficient on multiple, independent grounds. As an initial matter, Plaintiff has already waived this claim in conceding that he sued the wrong entity. (D.I. 137, Ex. 17 at A415)  Regardless of waiver, Plaintiff's claim does not satisfy the fundamental elements of a breach of contract action.

Plaintiff contends that CB Partners owes contractual obligations to the Plaintiff and is bound by the LP Agreement because of its status as a general partner of CB Fund-DE. Plaintiff's

23

argument fails to address the separate legal entity status of CB Partners under 6 Del C. § 15-201(a).

Plaintiff attempts to avoid summary judgment on the breach of contract claim by constructing an argument based on breach of section 6.5(c) of the Operating Agreement which is not pleaded in Count IX.[15]  Summary judgment is not the proper stage to attempt to amend or reshape defective pleadings. The law is clear that a party opposing summary judgment must "point to concrete evidence in the record which supports each essential element of his case." *Coastal Grp., Inc. v. Westholme Partners*, No. 94-3010, 1998 WL 34233133, at *4 (D.N.J. Dec. 15, 1998), aff'd, 229 F.3d 1137 (3d Cir. 2000).

Even if the court considers Plaintiff's new allegations of breach of the Operating Agreement, the record is undisputed that the Plaintiff was convicted of fraud and felonies, and his conviction is final and non-appealable. There is no triable issue of fact concerning the interpretation of section 6.5(c) resulting in forfeiture of Plaintiff's equity "for cause." Contract interpretation is a matter of law for the court to decide. *Yeransian v. Markel Corp.*, No. CV 16-808-GBW, 2023 WL 3884975 at *3 (D. Del. June 8, 2023).

Accordingly, the court recommends **GRANTING** Defendants' motion for summary judgment as to Plaintiff's claim for Breach of Contract (Count IX).

---

[15] Section 6.5(c) provides for automatic forfeiture of a Member's equity for "Cause." (D.I. 137, Ex. 2 at A101), "Cause" is defined in the Operating Agreement as, "…the commission of any activity pertaining to the Investment Manager, any other Member, the Company or the Partnership that constitutes fraud or a felony (as determined by a court of competent jurisdiction in a final, non-appealable judgment or in a final non-appealable arbitration.)" *Id.* at A89.

### F. Plaintiff's Claim for Breach of Fiduciary Duty (Count X) Cannot Survive Summary Judgment

Plaintiff's breach of fiduciary duty claim in Count X is asserted solely against the Individual Defendants and "Management Corp.-DE"[16] Plaintiff claims the Individual Defendants, in their capacity as directors of CB Management, breached fiduciary duties owed to him individually. (D.I. 137 at A593-A594) But no such cognizable claim exists under Delaware law.

Directors owe fiduciary duties to the corporation and to stockholders as a whole, not to individual stockholders. *N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007); *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at *11 (Del. Ch. Nov. 7, 2013).

Plaintiff argues that Defendants' summary judgment motion is incomplete because it addresses only the fiduciary duties owed by the Individual Defendants as corporate directors while ignoring their separate duties as managers of CB Partners, LLC. (D.I. 140 at 18-19) Plaintiff further contends that Count X alleges breaches in both capacities, and managers of an LLC owe fiduciary duties of loyalty and care to co-members unless explicitly waived, which is not the case here. *Id.*

As Defendants correctly point out, under the Operating Agreement, the Individual Defendants are "members" not managers of CB Partners. (D.I. 137, Ex. 2 at A88 and A91) Plaintiff contends the Individual Defendants are liable to him personally for their breach of fiduciary duties, and relies upon an hallucinated case for support. (D.I. 140 at 19) (citing

---

[16] Management Corp.-DE was dismissed from the case. (D.I. 46, D.I. 64)

25

*Morgan v. El Paso Co.*, 2005 WL 106477, at 2 (Del. Ch. Jan. 6, 2005)). The court will, therefore, not consider Plaintiff's argument.

Therefore, the court recommends **GRANTING** Defendants' motion for summary judgment as to breach of fiduciary duty (Count X).

### G. Rule 56(d) Claim

In a final attempt to save his claims, Plaintiff invokes Rule 56(d) and asks for additional discovery. (D.I. 140 at 25) In order for the court to grant relief under Rule 56(d), Plaintiff is required to "show[] by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Although Plaintiff submits a declaration in support of his opposition to summary judgment (D.I. 140, Ex 1), this declaration is inadequate for purposes of Rule 56(d) because it does not specify "what particular information [ ] is sought; how if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Shelton*, 775 F.3d at 568 (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 140 (3d Cir. 1988)). Plaintiff makes general complaints without specifically claiming, "Defendants' conduct reflects a coordinated pattern of obstruction that has blocked every avenue to relevant evidence." (D.I. 140, Ex 1 at 6)

Furthermore, Plaintiff fails to explain why the discovery he now seeks was not timely pursued. Plaintiff did not serve his first set of written discovery requests until June 30, 2025, (D.I. 95) a little more than one month before the close of discovery on August 2, 2025. (D.I. 65) He did not seek relief from the court with respect to any of the alleged deficiencies in Defendants' responses, which are raised for the first time in his answering brief. (D.I. 140) The only discovery Plaintiff moved to compel concerned requests for depositions of Kao and Kuo. (D.I. 108) The court denied Plaintiff's motion to compel and will not consider Plaintiff's attempt

26

to re-argue it at this stage of the case. (D.I. 121) Any alleged discovery deficiencies are, therefore, attributable to Plaintiff's own lack of diligence. Even if the court were to accept Plaintiff's allegations regarding discovery, he fails to demonstrate how the purportedly missing information would create a genuine dispute of material fact sufficient to preclude summary judgment.

Therefore, the court recommends that Plaintiff's motion under Rule 56(d) be **DENIED.**

## V. CONCLUSION

For the foregoing reasons, the court recommends that the Defendants' Motion for Summary Judgment (D.I. 134) be **GRANTED** on all counts, and Defendants' Motion for Judgment on the Pleadings (D.I. 72) be **DENIED** as moot.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **February 26, 2026**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation issued.

27

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the cfjfjourt's website, http://www.ded.uscourts.gov.

Dated: February 19, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE